*In re* MARRIAGE OF ROBERT A. BUSH, Petitioner-Appellant, and BARBARA A. BUSH, Respondent-Appellee.

Second District   No. 2—87—0925

Opinion filed June 2, 1988.—Rehearing denied July 12, 1988.

Paul R. Jenen, of Wheeling, for appellant.

Ronald F. Coplan, of Morrison, for appellee.

JUSTICE INGLIS delivered the opinion of the court:
Petitioner, Robert A. Bush, appeals from orders entered on post-judgment petitions granting respondent, Barbara A. Coulson, f/k/a Barbara A. Bush, sole custody of their minor children and allowing

Barbara to remove their minor children to another jurisdiction. Robert contends that the court's decision was against the manifest weight of the evidence. We reverse:

Robert and Barbara were married on February 28, 1981. At that time it was the second marriage for each. Robert had an adopted daughter, Stacey M. Bush, from his previous marriage, and Barbara had one child, Laura J. Bush, from her previous marriage. Robert subsequently adopted Laura, and the parties gave birth to a third child, Adam R. Bush. On December 27, 1984, Robert filed his petition for dissolution of marriage, and judgment was entered on that petition on May 8, 1986. Incorporated within the judgment for dissolution was the parties' agreement that Barbara would have sole custody, care, and control of their minor children, Laura, then 14, and Adam, then four, conditioned upon her remaining within the Elizabeth, Illinois, school district for a period of not less than one year. That agreement further provided that in the event Barbara should elect to move out of the Elizabeth school district, the issue of custody of the minor children would be allowed to come before the circuit court for a full custody hearing to determine the best interests of the children. Stacey was 19 and emancipated at the time of the dissolution and was not subject to the custody provision.

On December 2, 1986, Barbara initiated the instant action by filing her post-judgment petition to remove Laura and Adam from Illinois to California. Robert filed a motion to strike and dismiss Barbara's petition to remove and subsequently filed his counterpetition seeking custody of the parties' minor children. The trial court held a hearing on both petitions on March 27, 1987.

The following facts were established at the March 27, 1987, hearing. Robert is an attorney licensed to practice law in Illinois. At the time of their marriage, Barbara was a computer programmer. The parties lived and worked in the Chicago metropolitan area. Sometime in the summer of 1984, the parties moved from Mount Prospect, Illinois, to rural Jo Daviess County. Robert owned property in Elizabeth, Illinois, and the parties frequently travelled to that location. According to Robert, they moved to Elizabeth because they liked the area and "country ethic" and wanted to raise their children there. Although Laura and Adam accompanied their parents, Stacey remained in Mount Prospect to finish school and work.

For the most part, Robert severed his professional practice from the Chicago area; however, he did maintain a relationship with a corporate client demanding a great deal of his time. In December 1984, Robert underwent triple-bypass heart surgery. He was released from

the hospital on December 21, 1984, and filed his petition for dissolution of marriage five days later. Robert left the marital home at Barbara's request the following month. Despite leaving the marital home, Robert maintained his relationship with Laura and Adam.

Pursuant to the subsequently entered judgment of dissolution, Robert was given visitation rights on alternate weekends from Friday night to Monday morning, plus one night per week. In addition, he was given visitation on alternate holidays and two weeks of extended visitation during the summer. For the most part, Robert exercised his weekend visitations, but would generally bring the children home on Sunday nights rather than Monday mornings. He exercised his visitation rights in the middle of the week by occasionally taking the children out to dinner. He also called them on the telephone every other night. Robert stated that if the children were removed to California, he could not afford the costs of transportation to see them and his visitation with the children would be substantially impaired.

With respect to the type of relationship Robert enjoyed with his children, testimony indicates that Robert actively performed many of the responsibilities associated with parenthood, such as transporting the children to appointments and other functions, bathing and reading to Adam, and taking the children on vacations. Robert and Barbara shared disciplinary responsibility and acted together on such things as placing Adam in preschool, making him wear undershirts, and weaning him of his pacifier; however, the record is more supportive of Robert's assertion that he had the primary role in those activities.

Barbara testified that she had remarried to Thomas Coulson and wished to move to Foster City, California, to be with her new husband as well as to take advantage of the employment opportunities there. Barbara stated that the Foster City community is comparable to Mount Prospect, Illinois. Barbara indicated that she would be willing to pay half the costs of transporting the children to and from Illinois. However, Barbara also stated that she would still go to California if the court would not allow her to take the children.

Thomas Coulson owns a corporation engaged in contracting and plastering. He indicated that he had offered Barbara a $20,000-per-year position as a computer programmer with that company. Barbara's position would leave her weeknights and weekends to be with the children. Coulson has four children from a previous marriage, and, although his former wife has physical custody of those children, they share legal custody. He stated that he exercises his visitation rights on a frequent basis. At the time of the hearing, Coulson lived in a two-bedroom apartment in Foster City with two stepsons born to his

former wife during her previous marriage. During oral argument it was represented that Coulson and Barbara have since had a child together. The Coulsons planned to purchase a four- or five-bedroom house. The record indicates that Coulson has an amicable relationship with Adam and Laura.

Finally, although Laura expressed a preference to go to California with Barbara, and Adam expressed a preference to remain in Elizabeth with Robert, Laura told the trial judge during her *in camera* interview that she and Adam got along well, subject to some normal sibling jealousy. Laura further stated that she wanted Adam to go with them to California.

Prior to the hearing, the court required Robert, Barbara, Laura, and Adam to submit to a psychological interview by Forest Price, a clinical social worker with the Glenwood Park Evaluation & Treatment Center. Price had conducted similar interviews of the parties prior to the dissolution of marriage. In his subsequent evaluation, Price concluded:

"There is no easy decision in this case at all. Likewise, there are no known indicators to tell us whether or not Adam would suffer any serious psychological problems if he were separated from his mother at this early age in order to grant him his wishes either. We do know from studies and case examples of damaged children who were early separated from their primary nurturing source.

\*\*\* At this point the scales seem to lean more towards the children being permitted to go to California with their mother. That Laura would go where ever her mother moves is more easily understood and acceptable. The question of whether or not a 5-year-old is better off in the custody of mother or father is really the most difficult one here, especially since the child verbalizes a desire to live with his father. Being aware that this child was bonded to both mother and father and has truly not completed *his need for maternal nurturing is the only justification for permitting Adam to be taken to California by his mother.*" (Emphasis added.)

On June 9, 1987, the trial court issued a memorandum opinion finding that it was in the best interests of the minor children that their custody remain with Barbara and granting Barbara's petition to remove Laura and Adam from Illinois to California. In its opinion, the court set forth the standard upon which a petition for removal should be granted and, although acknowledging that Barbara was not entitled to any presumptions for being named the custodial parent, none-

theless noted that the cases reflected that it was generally in the best interests of the child to remain with the parent in whose custody the court placed it. The court agreed with Price's conclusion that Adam's need for maternal nurturing had not ended and stated that balancing Adam's relationship with his mother and sister against factors relating to his adjustment to home, school, and community, the interaction and interrelationship of Adam with his mother and sister was compelling. On September 1, 1987, the trial court entered its final order awarding Barbara custody of Laura and Adam and permitting Barbara to remove the children to California. Robert filed this timely appeal. On appeal, Robert represents that because Laura is now 16 years old, he does not wish to contest the judge's order relative to her. Thus, our opinion affects only the court's decision as it relates to Adam.

Robert first contends that the trial court's decision awarding Barbara sole custody of Adam was against the manifest weight of the evidence given the record's indication that Adam had a strong bond with Robert and desired to remain with Robert. Robert further argues that Adam would enjoy a more stable environment by remaining with him, and the trial court's conclusion that Adam's relationship with his mother and sister was more compelling was in effect an improper imposition of the "tender years" doctrine, a presumption that it is in the best interest of a child in "tender years" to be placed in the custody of the mother. We agree.

■ Pursuant to a stipulation entered between the parties, the court addressed the custody issue pursuant to section 602 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 602). Section 602 provides, in pertinent part:

"Best Interest of Child. (a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the

child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." (Ill. Rev. Stat. 1985, ch. 40, par. 602.)

The primary consideration before the trial court in a child custody case is the welfare and best interests of the child. (*In re Marriage of Leopando* (1982), 106 Ill. App. 3d 444, 449.) The trial court has broad discretion in making a custody determination; however, its discretion is not unlimited, and when the award is contrary to the manifest weight of the evidence, it is the duty of the reviewing court to reverse that decision. 106 Ill. App. 3d at 449.

■■ The evidence in the instant case more than adequately supports Robert's contention that he should have been awarded custody of Adam. Much can be said for the record created by Robert reflecting the commendable time and effort he has spent with Adam. While in the marital home Robert regularly bathed and read to Adam and put him to bed. After leaving the marital home Robert continued to perform many of the responsibilities associated with parenthood, including taking the children to appointments and on vacations. Robert engaged in frequent visitation and telephoned the children every other night. More significantly, the record reveals that Robert was the primary disciplinarian while in the marital home and continued in that capacity after leaving. Furthermore, Robert introduced the testimony of several witnesses who corroborated his extensive involvement and close relationship with Adam.

In contrast, there is very little in the record supporting the court's decision to award custody to Barbara. Instead, the record indicates that Barbara had trouble getting Adam to mind her and was lax in seeing through certain aspects of discipline that she and Robert agreed upon. While not a deciding factor in our decision regarding custody, we further note that Barbara's intent to engage in full-time employment coupled with raising her family in a household of no fewer than five, and often times as many as nine, children being present would leave her little time to devote to Adam.

■■ ■ Moreover, our examination of the record reveals that in rendering its decision, the trial court relied heavily on Price's conclusion that Adam's need for maternal nurturing had not ended. We believe that the trial court's reliance on this factor was an improper imposition of the "tender years" doctrine. The "tender years" doctrine is a judicial presumption that, unless proved otherwise, the mother is always better suited to care for children in their "tender years" than is the father. (See *In re Marriage of Sieck* (1979), 78 Ill. App. 3d 204, 214-15.) Illinois courts have held that this presumption favoring the

mother is no longer valid. (78 Ill. App. 3d at 215; see also *In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 173.) In *Switalla,* the trial court determined from the evidence that it was in the best interest of the children that their custody be placed with the mother. (87 Ill. App. 3d at 174.) In explaining his decision, the trial judge referred to the "tender years" doctrine in rendering his decision, but further stated that he was not applying it arbitrarily, recognizing that in a given situation the father might supply the same needs better than the mother. (87 Ill. App. 3d at 171.) On appeal, the court rejected the father's "tender years" doctrine challenge to the custody order, noting that the trial court made extensive findings of fact which supported the conclusion that the mother could continue to perform the valuable services she was rendering to the children only if she had custody on a continual basis. (87 Ill. App. 3d at 175.) In the instant action, unlike *Switalla,* the trial judge did not make extensive findings of fact regarding Barbara's relationship with Adam. Instead, the court merely concurred with Price's conclusions regarding Adam, stating, "at his age, Adam's need for maternal nurturing has not ended."

■ Accordingly, we conclude that the trial court's decision awarding custody of Adam to Barbara is against the manifest weight of the evidence. Given our decision on the custody issue, we need not fully address Robert's contentions regarding the propriety of the court's decision on removal. However, we nonetheless note that the Illinois Supreme Court in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, has recently disapproved of the standard used by the trial judge in the instant action for granting Barbara's removal petition. The order appealed from is therefore reversed, and this cause is remanded to the trial court with direction to award custody of Adam to Robert and to establish reasonable rights of visitation by Barbara.

Reversed and remanded.

NASH and WOODWARD, JJ., concur.