*In re* MARRIAGE OF DONNA BRANHAM, n/k/a Donna Flath, Petitioner-Appellee, and MICHAEL BRANHAM, Respondent-Appellant.

Fourth District    No. 4—92—1014

Argued June 17, 1993.—Opinion filed August 5, 1993.

Laura D. Clower (argued) and D. Cameron Dobbins, both of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Wayne O. Smith (argued), of Dilks, Rodeen, Gibson & Smith, Ltd., of Paxton, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Respondent Michael Branham appeals an order entered November 10, 1992, in the circuit court of Ford County, granting the request of petitioner Donna Branham, n/k/a Donna Flath, to modify a judgment of dissolution of marriage and remove the parties' minor child, Joshua, from Illinois. Respondent maintains on appeal the trial court's order was against the manifest weight of the evidence. We affirm.

The petition for modification and removal of the child from Illinois, filed March 2, 1992, alleged as follows: (1) the court had previously entered a judgment of dissolution of the parties' marriage on October 16, 1987; (2) the court entered an order on the stipulation of the parties as to custody and visitation of the minor child on January 28, 1988; (3) pursuant to the stipulation of the parties, they were awarded joint custody of the child, with petitioner to have the primary physical custody, subject to respondent's visitation rights as defined in the stipulation; (4) since the entry of the stipulation and order, there was a material change in circumstances of the parties, in that petitioner has remarried; (5) her present husband, Michael Flath, was on active duty in the United States Air Force and was stationed at Chanute Air Force Base in Rantoul; (6) due to the closure of Chanute in the fall of 1993, petitioner and Flath will be forced to relocate their residence and duty assignment; (7) it is in the best interest of the parties' minor child to remain with petitioner subject to respondent's right of reasonable visitation; and (8) the petitioner and Flath will necessarily be required to relocate from their current residence near Paxton, Illinois, to an area outside of Illinois.

Evidence was presented at the hearing on the petition that, since the filing of the petition, Flath, who was a staff sergeant in the Air Force, had decided to take early retirement and wanted to move 230 miles from Paxton, Illinois, to Waukesha, Wisconsin, to work in his family's pizza business.

Respondent testified as an adverse witness as follows: (1) the basis for his objecting to the removal of the child was that the move would substantially reduce the time he could spend with his son, and it would take Joshua away from his school, church, and his immediate blood relatives in the Paxton area; (2) he was entitled to visitation with Joshua every other weekend, alternate major holidays and four weeks during the summer; (3) he had been able to exercise most of his visitation rights, except for a period in 1991 when he was behind in child support and thought respondent would not allow him to see Joshua; (4) he has attended functions at Joshua's church and school, including plays, musicals, and open houses; (5) he has asked the school to provide copies of report cards and homework, but he felt the school had been lax in doing so; and (6) petitioner indicated to him that she would make Joshua available for visitation in the event they are allowed to move to Wisconsin, but it would not be as much time as he currently had available.

Petitioner testified that respondent had not exercised all the visitation with Joshua to which he was entitled. She noted he had never

taken Joshua for the four weeks in the summer, and from July 1990 to April 1991, he just quit exercising visitation entirely. She said he did not telephone and did not renew visitation until she filed a petition in court for past-due child support. She noted he then resumed visitation but skipped "a few" times without calling to say he would not be coming, and she called respondent to arrange a rescheduled visit. Petitioner testified that she had never withheld visitation and that it was respondent who told her he was having financial problems and did not want to involve Joshua. She further testified that Joshua had recently started Little League, and he was upset that respondent had not gone to any games.

Petitioner testified that Joshua loves his dad, and she was not seeking to prevent Joshua from continuing to have a relationship with respondent. She said the reason she wanted to move from Illinois was because she and her husband had been offered jobs with his brother's pizza business, and nothing would be available to him in the area when he retired from the Air Force. She indicated she would be working as a waitress part-time, and she would be making more money, including tips, than she had been at her previous job as a bookkeeper at a nursing home. She said her husband would initially be making approximately $300 less per month than he had been making in the Air Force. Petitioner also indicated that she would be working from 10 a.m. to 3 p.m., and would be able to be with Joshua before and after school.

Petitioner testified that Waukesha, Wisconsin, is 230 miles from Paxton, and she had driven there by car in 3½ to 4 hours. She further testified Joshua has aunts, uncles, cousins, and grandparents in the Paxton area, and the only relative in Wisconsin, other than the Flaths, is a great-aunt who is not close to Joshua. She said if she moves to Wisconsin, she will be returning to the Paxton area to visit the extended family. She said she would allow Joshua to visit with respondent at those times. She also proposed that she would be willing to meet respondent halfway for visitation on some weekends, every other major holiday and in the summer.

Petitioner indicated that they would initially be staying with her husband's parents in Waukesha, until they could find a place of their own. She said a new school was being built one block from the Flaths' house. She admitted she had no idea where they might be living when they moved out of his parents' home, nor did she know if they would be able to find a house near that school.

Petitioner testified she would like to finish her education at a technical college in Waukesha when she moves to Wisconsin, but she

admitted there was no reason she could not continue attending Parkland College if she did not move. She also said she had not sought employment as a waitress in Illinois.

Sergeant Flath testified that he is a 12-year veteran of the Air Force with a specialty in computer maintenance. He noted that after the air base in Rantoul closes in the fall of 1993, the Air Force will be making cutbacks, and it would be more difficult to take early retirement. He said if he stayed in the Air Force, he could request only that he be transferred within a region, for example the Midwest. He could not request a particular base. The only other base in Illinois is near St. Louis. He said he had not done anything with regard to seeking civilian employment in Illinois, because he had looked in the newspaper and had not seen anything for computer maintenance. He indicated his goals were to go to Wisconsin and use the manager-trainee position at the pizza business as a stepping stone toward employment in Wisconsin as a correctional officer or with the post office.

Michael Flath's brother Richard then testified concerning the nature of the pizza business and Michael's chances for advancement in that business. He said he owned a 50% interest in the business and his father-in-law owned the other half. He said Michael would earn $300 per week initially, plus full medical and life insurance, and petitioner would be able to "very comfortably" earn $7 per hour as a waitress.

Testifying on his own behalf, respondent gave additional testimony as follows: (1) he always rescheduled any weekend visits that he missed; (2) he was not able to exercise his four-week summer visitation prior to the summer of 1992 because of his employment situation; (3) he currently lives with his fiancee, but she is not home on weekends when Joshua is visiting; (4) on a typical weekend, he picks Joshua up on Friday night, then on Saturday evening they have dinner with respondent's mother, and afterward they all return to the grandmother's farm near Paxton to spend Saturday night and Sunday; (5) Joshua has his own bedroom at his paternal grandmother's house, and he keeps a supply of clothes and toys there; (6) he intends to watch Joshua's Little League games whenever possible; (7) he had recently started a new job that was more stable than previous ones and would allow more time for visitation; and (8) he intended to exercise his four-week visitation in the summer.

Both parties argued to the court concerning the best interest of the minor. Respondent argued the move would have a drastic effect on his relationship with the child, because it would change his current visitation of approximately 85 days to approximately 33 days due to

the loss of alternate weekend visitation. He maintained there was not a rational basis to allow petitioner to move out of the State.

In determining that petitioner should be allowed to remove the minor from Illinois, the court addressed only the question of petitioner and her husband's employment situation. The court noted that with the closing of the air base, they would not be able to stay in the area if Flath remained in the Air Force, and the nearest Illinois base was as far from Paxton as Waukesha, Wisconsin. The court reasoned that since people trained to do duties in the Air Force are ill prepared to transfer those skills outside the Air Force, the best chance for employment would be in the family business. The court concluded that it would allow the motion and ordered visitation to include four weeks in the summer, half of each Christmas and Easter vacation and one weekend per month during the rest of the year. In addition, respondent would be allowed to visit with Joshua anytime petitioner returned to the area to visit her family. The court made no other findings of fact and did not specifically address the question of whether the move was in Joshua's best interests.

Section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 609) provides that the court may grant leave, to the party having custody of a minor child, to remove the child from Illinois, whenever such approval is in the best interests of such child. The statute indicates the burden of proving that such removal is in the best interests of the child is on the party seeking the removal.

The Illinois Supreme Court identified five factors for the court to consider in determining whether a proposed removal is in the best interest of the child sought to be removed. The factors to be considered are (1) the likelihood that the move will enhance the general quality of life for both the custodial parent and the child; (2) the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation; (3) the motives of the noncustodial parent in resisting the removal; (4) the visitation rights of the noncustodial parent; and (5) whether a realistic and reasonable visitation schedule can be reached if the move is allowed. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045-46.) Neither the Act nor *Eckert* requires a recital by the circuit court of findings in regard to the factors discussed in *Eckert*, but the evidence was sufficient in that regard to support the decree.

The first factor is the likelihood that the proposed move will enhance the general quality of life for the child and the person having

physical custody. Although it might initially appear that the move would not enhance the quality of life because the family will be moving from a single-family dwelling to sharing with Flath's parents and they will be making less money, the record indicates the situation would likely be temporary. Moreover, respondent and her new husband testified he would not be able to find comparable work in the Paxton area, and with the closing of the air base in Rantoul, this could, as the trial court determined, be correct.

The case at bar is unlike *In re Marriage of Davis* (1992), 229 Ill. App. 3d 653, 594 N.E.2d 734, where this court determined that an order allowing the removal of a child from Illinois was against the manifest weight of the evidence. There, the petitioner wanted to move to Georgia with her fiance. The child would be separated from two siblings who were in the custody of respondent. The court noted that the mere desire to move to another State, without more, was insufficient to show the move to be in the best interest of the child.

The *Davis* court, quoting *In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 466, 574 N.E.2d 1364, 1369, noted as follows:

" 'It is virtually impossible to envision a situation wherein the custodial parent does not wish to live with a new spouse. If the obvious happiness the spouse would receive from being able to live with a new spouse were sufficient to prove removal in the child's best interests, court supervision of the proceedings would be unnecessary, and at best, ceremonial. A custodial parent must prove more than his or her own desire to live with a new spouse to prove that a child's best interests will be served by removal.' " *Davis*, 229 Ill. App. 3d at 661, 594 N.E.2d at 739.

Here, the evidence indicated that petitioner's husband was retired from the Air Force and, after a superficial check of area newspapers, had not been able to locate employment in his specialty. There was no evidence he attempted to find work in the Paxton area as a manager trainee. The general quality of Joshua's life may not be directly enhanced by the move to Wisconsin. However, if the removal is denied, and petitioner and her husband are unable to obtain employment, the quality of Joshua's life will be considerably lessened. Moreover, the evidence indicated petitioner would be able to work fewer hours as a waitress in Wisconsin and be at home with Joshua before and after school. In addition, although they would initially be sharing a house with Flath's parents, the housing could be found to likely be comparable to what they had in Paxton. Finally, the Flaths may likely need to relocate, and the distance from Waukesha to Paxton is no

greater than it would have been if the Flaths were able to relocate to Scott Air Force Base in Belleville, Illinois. The move would not appear to prevent the minor from having frequent contacts with his father and other close relatives.

As to the second and third factors listed in *Eckert*, the evidence shows that neither party has improper motives for seeking or resisting the removal. Petitioner had not tried to frustrate respondent's visitation with Joshua, and the evidence indicates she had actually made efforts to reschedule missed visits to ensure that respondent and Joshua were able to be together. She testified that Joshua loves his dad, and she encouraged them to spend time together. Respondent, although he has missed "a few" visits, has a fairly close relationship with Joshua and naturally wants him to remain in the area. Since the record clearly shows both parties had proper motives regarding their reasons for seeking or resisting the removal, we need not discuss the issue further. *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 188, 529 N.E.2d 780, 782.

Finally, with regard to the last two factors, we note petitioner is willing to allow liberal visitation, including an extended visit during summer vacation and whenever she is visiting her own relatives in Illinois. The distance from Paxton to Waukesha is not so significant that a realistic and reasonable visitation schedule cannot be maintained.

The *Eckert* court noted that a reasonable visitation schedule was one that would "preserve and foster the child's relationship with the noncustodial parent," and that the court should be reluctant to interfere with a parent who has been diligent in exercising his visitation rights. (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.) This was especially true where the removal is for " 'frivolous or unpersuasive or inadequate reasons.' " (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046, quoting *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 206, 365 A.2d 27, 30.) The court reasoned, however, that if the best interests of the children would not be affected by a move to another State, the custodial parent should be free to move. The court further noted that if the noncustodial parent objects to the removal but has not exercised his visitation rights, the court should consider this fact in determining whether to grant the petition to move. *Eckert*, 119 Ill. 2d at 327-28, 518 N.E.2d at 1046.

Here, respondent had not previously exercised his four-week summer visitation. If he and Joshua are able to spend four weeks together in the summer, in addition to half of each Christmas and Easter vacation, plus eight other weekend visits per year and any visits

which would occur when petitioner returns to Illinois to visit her family, we conclude that the relationship between Joshua and respondent is likely to be preserved. As the court stated in *Zamarripa-Gesundheit*, although the relationship will be somewhat different than it has been, the difference would not be significant, and the interests of the custodial parent should not be subordinated to those of the non-custodial parent. *Zamarripa-Gesundheit*, 175 Ill. App. 3d at 190, 529 N.E.2d at 783.

We conclude that the evidence before the trial court was sufficient to allow the court to conclude the removal was in the best interest of the minor.

Accordingly, for the reasons stated, we affirm the decision of the trial court.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.