31 March 2000

NOS. 4-99-0142, 4-99-0312 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of ) Appeal from

DAVID V. LUDWINSKI, ) Circuit Court of

Petitioner-Appellant, ) Champaign County

and ) No. 91C724

P. GRETCHEN LUDWINSKI, n/k/a       )

P. GRETCHEN SILER-SHAFER, )    Honorable

Respondent-Appellee. ) Ann A. Einhorn,

) Judge Presiding. 

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 1998, petitioner, David V. Ludwinski, peti

tioned to remove his two minor children from Illinois.  In January 1999, the trial court denied the petition.  David ap

peals, arguing that the trial court erred in ruling that removal would not be in the best interests of the children.  We agree and reverse.

I. BACKGROUND

Petitioner and respondent, P. Gretchen Siler-Shafer, married in 1986.  Two children were born to the marriage, David A. and Michael.  Gretchen's two daughters from a previous mar

riage also lived with the parties during their marriage. 

In December 1991, the trial court granted the parties a dissolution and entered judgment as to grounds; the parties then agreed to temporary joint custody under which each parent had equal time with the children.  After further hearing, in July 1993, the trial court entered judgment awarding custody of the children to David.  The court awarded Gretchen liberal visita

tion, including liberal telephone contact.  Gretchen's visitation consisted of alternate weekends, one day midweek from 3:30 p.m. to 8 p.m., eight weeks during the summer (subject to weekend and midweek visitation by David), two days at Thanksgiving, one-half of Christmas break, Mother's Day, spring break in alternate years, and 24-hour periods for remaining holidays in alternate years.  Slight modifications in the schedule were made over the years, and Gretchen exercised her visitation regularly.

In December 1992, David remarried.  He and his wife, Rochelle, had three daughters, one of whom died in infancy.  David and Rochelle lived with their two daughters and David A. and Michael in Monticello, Illinois.  Gretchen also remarried and, at the time of the hearing on the removal petition, was living with her husband, Steve Shafer, in Tolono, Illinois.

In July 1998, pursuant to section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609 (West 1998)), David sought permission to remove the children to Utah because he had a job offer from the Logan Agency (Logan Agency), an insurance business co-owned by Leland Cottle (Ro

chelle's uncle) and Melvin Olson.  

After hearing copious amounts of testimony, the trial court denied David's request for removal.  The trial court concluded that (1) the proposed removal of the children to Utah would not enhance the general quality of life for the children; (2) the removal would seriously impact Gretchen's involvement with the children; and (3) the proposal for visitation and other methods for the children to keep in touch with Gretchen would not preserve and foster the close relationship between the children and Gretchen.  This appeal followed.

II. ANALYSIS

On appeal, David argues that the trial court erred in ruling against his petition to remove the children from Illinois because it was, in fact, in their best interests to move to Utah.  Section 609 of the Act provides that removal may be granted by the trial court if it is in the children's best interests.  Therefore, in removal cases, the paramount question is whether the move is in the children's best interests.  The party seeking removal has the burden of showing that removal of the children is in their best interests.  While removal cases must be judged on their own unique set of facts (
In re Marriage of Berk
, 215 Ill. App. 3d 459, 463, 574 N.E.2d 1364, 1367 (1991)), our supreme court has provided some guidance to the courts of this state in deciding these cases.  In 
In re Marriage of Eckert
, 119 Ill. 2d 316, 518 N.E.2d 1041 (1988), the court identified five factors that should be considered in determining whether removal is in the best interests of the children sought to be removed.  Those factors are (1) whether the proposed move will enhance the quality of life for both the custodial parent and the children; (2) whether the proposed move is a ruse designed to frustrate or defeat the noncustodial parent's visitation; (3) the motives of the noncustodial parent in resisting removal; (4) the visitation rights of the noncustodial parent; and (5) whether a reasonable visitation schedule can be achieved if the move is allowed.  
Eckert
, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.  A reason

able visitation schedule is described as one that would preserve and foster the children's relationship with the noncustodial parent.  
Eckert
, 119 Ill. 2d at 327, 518 N.E.2d at 1046.

In applying the above factors to the evidence adduced in the present case, we are mindful that the trial court's decision is not to be disturbed unless it is clear that its decision was against the manifest weight of the evidence and that a manifest injustice has occurred.  
Eckert
, 119 Ill. 2d at 328, 518 N.E.2d at 1046.  Although the trial court has broad discre

tion in these cases, that discretion is not unlimited and, when the decision is against the manifest weight of the evidence, it will be reversed.  
In re Marriage of Davis
, 229 Ill. App. 3d 653, 660-61, 594 N.E.2d 734, 739 (1992), citing 
In re Marriage of Bush
, 170 Ill. App. 3d 523, 529, 525 N.E.2d 163, 166 (1988).

The first factor to consider is the likelihood of
 enhancing the general quality of life for David and the boys.  The trial court found that the proposed move would not enhance the general quality of life for the children.  The court found that the boys would be moving from one middle-class environment to another, both with good schools.  The court expressed its concern that, although Rochelle had extensive family in Utah, the boys would be leaving actual blood relatives in Illinois.  

 We disagree.  The evidence indicates that the boys' quality of life would indeed be enhanced.  David and Rochelle hope to settle in Smithfield, Utah, and made an offer on a home there, contingent on selling their home in Monticello.  Ro

chelle's father, a teacher in the school district David A. and Michael would attend in Utah, testified that the schools in the district are very good and rate above the national norm.  The church that the family would attend is within a few blocks of David and Rochelle's proposed new home.  That area has a large population of people of the Mormon faith, the religious faith observed by David, Rochelle, and the minors, and previously observed by Gretchen.  Cultural and recreational activities are plentiful in the area of Utah where David wishes to relocate.  David A. and Michael, ages 11 and 9, respectfully, at the time of the hearing on the petition for removal, had been to Utah nine times since Rochelle married David, staying up to 10 days.  They get along well with Rochelle's family, who treat them as they do the other grandchildren, cousins, or nephews.  Rochelle's parents live on a farm.  When the boys visit, they play football and soccer in the yard, and their grandfather takes them four-

wheeling.  They have enjoyed their visits to Utah.

Even if we were to conclude that the boys' quality of life would not be enhanced directly, we find that it would be indirectly, also a factor to be considered.  If only the direct benefits that affected children were considered, rarely would a situation arise where removal would be permitted where children were in a good environment with good schools, good parents, and good friends.  The move to Utah will significantly affect the general quality of life for David, the custodial parent, and Rochelle, therefore indirectly enhancing the boys' quality of life, and this indirect benefit should be considered.  See 
In re Marriage of Carlson
, 216 Ill. App. 3d 1077, 1081, 576 N.E.2d 578, 580 (1991) (it is necessary to also consider indirect benefits to the children from the proposed move).  Accordingly, what is in the boys' best interests cannot be addressed without considering the best interests of the other members of the household in which the boys live.  

The trial court found that David's quality of life would be enhanced due to close contacts with Rochelle's family.  As for David's financial situation, though, the trial court found no promises of increased income, only an opportunity--perhaps a once-in-a-lifetime opportunity--but only an opportunity.  Morever, the court commented that opportunities for increased income may exist in Illinois because, while David did not have family contacts in the insurance business, he had spent six years building a successful business on his own, and his boss testified that he was an above-average agent.  David was also being encour

aged to diversify, something he had not yet done. 
 As for Ro

chelle's professional opportunities, the court found that those in themselves were not sufficient reason to cause such a severe impact on the boys' relationship with their mother.

We agree with the trial court that David would derive benefits from a closer proximity to Rochelle's family.  We disagree, however, with the trial court's assessment of the evidence regarding David's financial situation.  The record shows that David currently works for American Republic Insurance Company (American Republic) selling insurance on a commission basis.  He has worked with American Republic since 1992.  Even though David would also be working on a commission basis with Logan Agency and no particular insurance business was assured him,  David could expect to earn between $75,000 and $80,000 his first year in Utah, a considerable increase compared to the $61,000 David was expected to make in 1998 at American Republic.  In addition, David could expect to earn between $95,000 and $100,000 within five years.  David will also continue to receive 60% of his vested renewals from American Republic.  

The record showed that David's current market area in Illinois had become unstable, and David was advised to shift his emphasis.  His manager testified, though, that when agents leave one market, one in which they have experienced much success, they can experience a greater drop in income until they can become readjusted.  Osborn stated that, at a minimum, David's income would be off by $10,000 by the end of 1998.  If David were to switch his emphasis, he could see his income drop further because of the time it would take to start up in another marketplace.

Not only does David have the opportunity to earn substantially more money with Logan Agency, Rochelle also has an opportunity to assist the family financially, thereby increasing the quality of life for the boys.  We recognize that David would initially incur costs associated with the move to Utah, as well as costs for transporting the boys back to Illinois for visita

tion with Gretchen.  He will, however, be in a better position to pay those costs:  his earning capacity will have increased, coupled with the income from Rochelle's employment.  Based upon the record, David has clearly shown that he has an opportunity to grow and become an integral part of a family-owned business and substantially increase his income.  In addition, he has met his burden by showing that the indirect and direct benefits to the children from moving to Utah outweigh any initial disruption that the move would or could cause the boys and their relationship with Gretchen and, as a result, the move would be in the best interests of the boys.  

We note that the trial court seems to have considered and believed that opportunities for increased income may exist for David in Illinois and, as a result, the trial court may have inappropriately penalized David for not seeking those opportuni

ties in Illinois.  This contention is further supported by the trial court's comment that David was encouraged to diversify, something the trial court felt David did not do, inferring that David did not make every effort to remain in Illinois.  Neither the statute nor 
Eckert
, however, requires that the custodial parent seeking removal exhaust all employment opportunities in Illinois prior to seeking employment out of state.  In addition, 
Eckert
 does not include "whether the parent seeking removal sought employment in Illinois" in its list as one of the factors for courts to consider. We recognize that the 
Eckert
 factors are not exclusive and are only factors to be considered and balanced 
and that all other relevant factors are to be considered.  
In re Marriage of Eaton
, 269 Ill. App. 3d 507, 516, 646 N.E.2d 635, 642-43 (1995).  Making the failure to seek employment in Illinois dispositive on the issue of removal, however, goes beyond 
Eckert
.  We acknowledge that when the motives of the parent seeking removal are suspect, one of the factors that courts should consider is whether the parent sought employment in Illinois.  However, the failure to do so, standing alone, is insufficient to deny removal.  Moreover, where, as in the present case, the motives of the parent seeking removal are clearly not frivolous, inadequate, or unpersuasive, but rather are sincere, then that factor is irrelevant.

The second 
Eckert
 factor that the trial court consid

ered was David's motive for seeking the move.  The trial court did not accept Gretchen's intimations that David was motivated by a desire to minimize her involvement with the boys.  The trial court believed that David's motive to move was primarily eco

nomic, although he would also enjoy the close family ties with Rochelle's family.  The record suggests that David's motives are well-intentioned and not an attempt to thwart visitation or interfere with the boys' relationship with Gretchen.

The next factor that the court considered was Gretchen's motive for resisting the move.  The trial court found Gretchen's conduct troublesome because Gretchen presented a history of manipulating the children, whether she recognized it or not.  She was extraordinarily possessive and lacked boundaries between the role of the parent and child, often discussing  inappropriate matters with the children.  The court was appalled by Gretchen's behavior.  Notwithstanding, the court found moving the boys to Utah would not mitigate any of Gretchen's actions.  Ultimately, the trial court found that Gretchen's motive to resist the move, her fears that the move would change the nature of her relationship with her sons, was valid.

We recognize that Gretchen has a close relationship with her sons and would miss them.  However, we conclude that Gretchen's inability to set proper boundaries, coupled with her history of psychologically manipulating the boys, raises ques

tions as to the genuineness of her motives in opposing the removal.

The next two 
Eckert
 factors to consider involve the visitation rights of the noncustodial parent and whether a realistic and reasonable visitation schedule can be reached if the move is allowed.  The 
Eckert
 court observed that it is in the best interest of a child to have a healthy and close relationship with both parents and, therefore, the visitation rights of the noncustodial parent should be carefully considered.  
Eckert
, 119 Ill. 2d at 327, 518 N.E.2d at 1045.  In making such a consider

ation, the court should assess a realistic and reasonable visita

tion schedule.  
Eckert
, 119 Ill. 2d at 327, 518 N.E.2d at 1045-

46.  The trial court found that Gretchen's rights to visitation would be profoundly impacted.  The court found Gretchen had "scrupulously" and even "overscrupulously" adhered "to every doc and tittle" of the court's visitation orders.  No visitation order could be implemented that would be "equivalent" to what Gretchen currently enjoyed.

The proposed method of transporting the boys for visitation, if they are allowed to move to Utah, would be air travel from St. Louis to Salt Lake City.  Travel by car from Gretchen's home in Tolono to St. Louis takes 2 1/2 to 3 hours.  Travel by car from Salt Lake City to Smithfield would be 1 1/4 to 1 1/2 hours.  

If permitted to remove the boys, David proposed visita

tion with Gretchen to be six to eight weeks in the summer, Thanksgiving, and spring break in even-numbered years and Christ

mas break in odd-numbered years.  He offered to pay for all airline tickets, with Gretchen responsible only for travel to and from the airport in St. Louis.

The evidence showed that the boys were very close to Gretchen, but as the court noted, it was not sure if the close relationship was due to Gretchen's psychological manipulation of the boys.  While each case must be decided on its own facts, an extremely close relationship between children and their noncustodial parent has been an important factor considered in denying removal in other cases.  See 
In re Marriage of Smith
, 172 Ill. 2d 312, 324, 665 N.E.2d 1209, 1214 (1996).  Evidence indi

cated that the boys expressed a preference not to move, a factor the trial court may have considered.  Yet, problems lie in relying upon the boys' wishes.  Such reliance provides an incen

tive for parental manipulation, which cannot be said to be in the best interest of the children.  
In re Marriage of Hefer
, 282 Ill. App. 3d 73, 77, 667 N.E.2d 1094, 1097 (1996).  Dr. Marty Traver, a psychologist who has treated the boys periodically since 1993, testified that she believed the only risk of David A. failing to adjust to the move would have to do with outside influences and manipulation.  

The trial court also heard testimony from Dr. Carol Diener, who Gretchen asked to see the boys.  Dr. Diener inter

viewed the boys twice each.  Dr. Diener testified that if the boys moved, their relationship with their mother would change, recognizing though that they would not completely break all ties with her.  The boys would still have a relationship with her, just a different one, 
i.e.
, a long-distance relationship.  

David is correct in pointing out that the visitation schedule upon removal need not be "equivalent" to that prior to the removal, as the trial court stated in this case.  Rather, "removal will have some effect on visitation, but the real question is whether a visitation schedule that is both reasonable and realistic can be created.  It need not be perfect."  
Eaton
, 269 Ill. App. 3d at 515, 646 N.E.2d at 642.  We recognize the importance of preserving the children's relationship with their mother.  This factor, however, must be weighed against another factor suggested in 
Eckert
 regarding the enhancement of the quality of life for both David and the boys.  On balance, we do not think that the interests of the custodial father should be subordinated to those of the noncustodial mother in this case.  See 
Eaton
, 269 Ill. App. 3d at 517, 646 N.E.2d at 643, citing 
In re Marriage of Branham
, 248 Ill. App. 3d 898, 905, 617 N.E.2d 1317, 1322 (1993). 

The trial court found that if the move to Utah were allowed, Gretchen's visitation and relationship with the boys would be reduced.  Any reduction in visitation is merely one factor to consider; its importance can be determined only within the context of the facts of the particular case.  Where a noncustodial parent has been diligent in exercising visitation rights, the court should be reluctant to permit removal of a child for frivolous or inadequate reasons.  
Branham
, 248 Ill. App. 3d at 904, 617 N.E.2d at 1322.  David's reasons, advancement in career and salary, are neither frivolous nor inadequate.  We are mindful of the frequent contact that Gretchen enjoys with the boys.  While the nature of Gretchen's relationship with the boys may change, the evidence did not suggest that harm would result. 

Finally, the trial court stated that the financial pressures involved in the move would inevitably be felt by the boys, and that David had ways to diversify or shift direction in his business here.  The trial court found that the boys' best interests would not be served by moving to Utah.  The trial court opined that no single dramatic factor weighed in favor of either allowing or disallowing the move.  This "is a narrow question and not an easy one."  The trial court considered the fact that the boys are in a known environment and removing them to an unknown environment would increase the pressures on them, escalate the stress, and remove them from the support of their mother.

The trial court heard testimony from two psychologists on this issue.  Dr. Diener stated that she did not think it would be in David A.'s best interest to move, but concluded that Michael had the capacity to adjust to the move.  However, Dr. Diener's involvement with the boys and the families was limited, as compared with that of Dr. Traver.  In addition, Dr. Diener admitted that her recommendation was only based on the limited information she had available to her.  In contrast, Dr. Traver, who has worked with these boys since 1993, testified that it would not be detrimental to the boys to move to Utah.  We acknowledge that psychological testimony is generally acceptable to ascertain the best interests of the child, but it is not dispositive of the issue.  
Eckert
, 119 Ill. 2d at 330, 518 N.E.2d at 1047.

We conclude that the stress, if any, that the boys may experience would not be detrimental.  Although the boys would have to adjust to the move to Utah, nothing in the record shows that the adjustment would be so difficult that, on that basis alone, the boys should remain in Illinois.  The boys are of the ages where they should readily adapt to their new environment.  They will be near several of their cousins and nephews, whom they have already met and with whom they have played.  In addition, Rochelle's father, who has been teaching in the school district where the boys will attend school, testified that he knows the teachers there.  He feels comfortable explaining the boys' situation to the the teachers and asking them to make a special effort to help the boys fit in.  He also stated that he teaches at the high school that the boys would be attending in the future.  Dr. Traver testified that, at David's request, she contacted a therapist in Utah and arranged for him to see the boys if they want.

If the custodial parent establishes a good, sincere reason for wanting to move to another jurisdiction, the trial court should consider all relevant factors in determining the best interests of the children.  This determination should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred.  
Eckert
, 119 Ill. 2d at 328, 518 N.E.2d at 1046.  The purpose of the 
Eckert
 factors is not to establish a test in which the parent seeking removal must pass every prong but only to set forth factors to be considered and balanced.  
Eaton
, 269 Ill. App. 3d at 516, 646 N.E.2d at 643.

In balancing the various 
Eckert
 factors here, we emphasize that noncustodial parents do not possess a veto power to stop a custodial parent from exercising a reasonable desire to move out of the state.  
Eaton
, 269 Ill. App. 3d at 514, 646 N.E.2d at 641.  Here, David's desire to move to Utah is genuine.  The move would undoubtedly benefit him.  We recognize that the paramount consideration is the boys' best interests.  The boys will, however, benefit both directly and indirectly.  The evi

dence suggested that David's financial situation will improve.  As a result, the boys will experience an increased standard of living along with the benefits derived from being close to Rochelle's family.  The evidence showed Gretchen's close relationship with the boys.  While the nature of this relationship will change, becoming a long-distance relationship, the quality of this relationship need not be adversely affected.  Close relationships can continue and even be enhanced when effort is expended to establish a reasonable visitation schedule.  
Eaton
, 269 Ill. App. 3d at 515, 646 N.E.2d at 642; see also 
In re Marriage of Taylor
, 251 Ill. App. 3d 58, 61-62, 621 N.E.2d 273, 275-76 (1993) (a reasonable visitation schedule can be reached that will allow the father to maintain a close relationship with his daughter by having extended visitation periods during the summer and during school breaks); 
In re Marriage of Zamarripa-

Gesundheit
, 175 Ill. App. 3d 184, 189-90, 529 N.E.2d 780, 783 (1988) (the liberal visitation rights proposed will provide an adequate means to foster relationship).  We are confident that a visitation schedule can be fashioned to preserve Gretchen's relationship with the boys.  Under these circumstances, we conclude that the trial court's denial of David's petition was against the manifest weight of the evidence.

III. CONCLUSION

For the foregoing reasons, we find that the denial of the petition to remove was against the manifest weight of the evidence.  We reverse that judgment and grant the petition to remove.  We remand this cause to the circuit court for the purpose of setting a visitation schedule in light of our ruling.

Reversed; cause remanded with directions.

COOK, P.J., concurs.

KNECHT, J., dissents.

JUSTICE KNECHT, dissenting:

The trial court had the opportunity to make a reasoned assessment as to whether a move to Utah would be in the chil

dren's best interests.  The court found the proposed move would not enhance the general quality of life for the children and the removal would significantly impair Gretchen's close involvement with her children.

David will lose money on the sale of his home in Monticello and the house proposed for purchase in Utah is more expensive.  The removal coupled with David's proposed visitation schedule will not only reduce Gretchen's visitation from between 100 and 116 days per year to 70 full days per year, but also place a serious economic burden on David when he incurs substan

tial costs in moving and the costs for transporting the boys back to Illinois for visitation.

The trial court concluded the better financial situa

tion David hoped for in Utah was speculative, as did the guardian 
ad
 
litem
, who also believed removal was not in the children's best interests.  The trial court noted the financial pressures involved in the move would inevitably be felt by the boys.  One might infer the trial court did not believe David would enhance his financial position by moving to Utah or the risk entailed in the move was too great to be borne by the children.

The trial court did not improperly penalize David for not seeking opportunities for increased income in Illinois.  Instead, the trial court simply recognized neither David nor his spouse made any effort to advance his or her career in Illinois, and they failed to 
prove
 the opportunities awaiting in Utah would necessarily improve their financial situation.

A close relationship existed between the boys and Gretchen.  The boys may well have long-term adjustment problems with the move.  Visitation time will be significantly reduced.  The children clearly and unequivocally stated many times and to many people they did not wish to move.  In these circumstances, the trial court's denial of the petition for removal was not against the manifest weight of the evidence.

I would affirm.