# Illinois Official Reports

## Appellate Court

*In re Marriage of Smith*, 2013 IL App (5th) 130349

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KATHERINE A. SMITH, Petitioner-Appellant, and CHASE W. SMITH, Respondent-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-13-0349 |
| Filed | December 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal arising from the dissolution of the parties' marriage in a Madison County court, the denial of petitioner's request to remove her child permanently to Ohio, where petitioner had found employment, was reversed along with the alternative custody orders requiring petitioner to either return to Illinois or give up custody, and orders were entered granting the parties joint custody, with petitioner retaining primary physical custody, denying petitioner maintenance, and remanding the cause for a determination of a realistic, workable visitation schedule. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 10-D-1340; the Hon. Ben L. Beyers II, Judge, presiding. |
| Judgment | Reversed in part, affirmed in part, and modified in part; cause remanded in part with direction. |

Counsel on
Appeal

Barbara L. Sherer and Amanda G. Highlander, both of Sherer Law Offices, of Edwardsville, for appellant.

Frederick M. Steiger, of Steiger Law Offices, of Edwardsville, for appellee.

Panel

JUSTICE CATES delivered the judgment of the court, with opinion. Justices Spomer and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, Katherine A. Smith (Mother), appeals the judgment entered by the circuit court of Madison County in connection with a custody and removal dispute arising from the dissolution of her marriage to respondent, Chase W. Smith (Father). We reverse in part and remand in part with directions.

¶ 2     In August of 2011, Mother petitioned the court for temporary removal of the parties' minor child to Ohio in order to accept a career position. The circuit court granted temporary removal on August 15, 2011. On June 27, 2013, after a trial on the issues of removal, custody, child support, maintenance, and debt allocation, the court entered a judgment of dissolution of the parties' marriage. In the judgment, the court denied Mother's request for permanent removal of the minor child and entered two alternate rulings concerning the award of legal and physical custody and visitation. Under the first alternative, Mother had to return to Illinois within 30 days. If she did so, she would retain primary physical custody of the parties' minor child, and Mother and Father would be awarded joint custody. Father, however, would have the ultimate decision-making authority regarding any and all medical, dental, educational, and extracurricular decisions pertaining to their minor son. Under the second alternative, if Mother chose not to return to Illinois within 30 days, Father would be granted sole legal custody of the child with Mother having only visitation rights and no decision-making authority concerning their son. The court also refused Mother's request for maintenance if she were required to relocate.

¶ 3     Mother filed her notice of appeal on July 11, 2013. Concurrently she sought in the circuit court a stay of the judgment pending appeal. Her request for a stay was denied. Mother then filed a motion for stay of the judgment pending appeal with this court on July 15, 2013. We granted her stay on July 22 subject to specific requirements for Father's visitation. We now address the merits of the appeal and reverse, in part, the court's judgment of dissolution of marriage.

¶ 4     The parties met in the fall of 2007 when Mother was visiting friends in Texas, where Father then resided. They became friends and began dating in 2009. By December of 2009, Father moved to Chicago to live with Mother. They were married in April 2010. Their marriage

produced one child, a son who is now three years old. Mother, who has a degree in business administration with a concentration in marketing, held a full-time position as a project manager at a Chicago advertising agency. She had worked for the same agency for five years. While working full-time for the advertising agency, she also worked part-time at Home Depot in order to save money and pay down debt. Father was unemployed when he moved in with Mother in Chicago and did not obtain employment until May of 2010, when he acquired a position with a mortgage servicing firm.

¶ 5    During the summer of 2010, the parties discussed moving closer to Mother's parents in Maryville, Illinois, after their child was born. Father believed it was important to have their child raised near family. Once they moved, the intent was for Father to obtain more lucrative employment and for Mother to be a stay-at-home mom. The plan included their living with Mother's parents until Father obtained a higher-paying job, thereby allowing them to afford their own housing. Accordingly, within two weeks of the child's birth, the parties relocated from Chicago, moving into the basement of the home of Mother's parents. Mother resigned from her position with the advertising agency in Chicago, while Father was permitted to transfer his employment to another office of the same company in the St. Louis metropolitan area. Unfortunately, the parties separated less than two months later.

¶ 6    After Father left, Mother and the minor son continued to live with Mother's parents. Having no income or any other viable source of funds on which to support herself and the child, Mother found part-time work at a nearby Home Depot in January 2011. She then began searching for full-time employment in marketing. She applied to approximately 30 companies for positions in marketing and advertising, all within the St. Louis metropolitan area. Unfortunately, she received no offers for employment within the metropolitan area. She did receive an offer, however, from an agency in Columbus, Ohio. If Mother accepted the new position, she would be earning more than she had previously earned at the agency in Chicago. The company also agreed to pay Mother's relocation expenses and provide temporary housing for two months. Other incentives included good health benefits, annual bonuses, and room for advancement. The community in which they would live offered high-quality housing at reasonable prices and had one of the best school systems in Ohio. Having been offered no full-time positions in the metropolitan area in her field, and needing a steady source of income, Mother petitioned the court for leave to temporarily remove the parties' son to Ohio to begin this new position. Her petition was granted and, accordingly, Mother and son relocated to Ohio.

¶ 7    Further evidence presented at trial revealed that Mother's parents are retired and have plans to relocate to Ohio to be near their daughter and grandson. Mother and her parents also have extended family in Cincinnati, Ohio. Neither Mother nor Father has any other family in the Maryville area. Mother grew up in the Kansas City area, while Father's family lives in Colorado. At one point, Father expressed interest in moving back to Colorado. After Mother moved to Ohio, Father changed employment in a lateral career move, although with less pay, and now works in St. Louis, Missouri. He continues to reside in Collinsville, Illinois, and believes he can maintain a relationship with Mother's parents should they remain in Maryville, Illinois.

¶ 8    Father presented at trial numerous instances of Mother's alleged controlling personality with respect to the parties' minor son. For example, Mother insisted on knowing the make and model of car seat Father purchased for their son and required him to show her the receipts. Mother, however, explained that Father's family often acquired older, used items for the child, and she wanted to ensure that the car seat used was safe. Mother also refused Father overnight visitation with the child for the first year. Mother explained that she was still breast-feeding him and did not have a reserve supply of milk for that length of time. As the guardian *ad litem* reported, Mother was a very organized individual with a more rigid personality, whereas Father had a more relaxed personality. According to the guardian *ad litem*, Mother was more overly protective as a new mother, as opposed to trying to control Father, and was not trying to interfere with Father or Father's relationship with his son. The guardian *ad litem* also reported that the parties' minor son was bonded and comfortable with each parent in each location. Despite the distance and hectic visitation schedule, the child has developed a good bond with Father. Additionally, despite their differences in parenting styles and personalities, collectively, the parties were doing a great job in fostering their son's development. The court chose not to follow the recommendations of the guardian *ad litem* and denied Mother's request for permanent removal of the parties' son. We now reverse that decision.

¶ 9    The primary consideration in any custody dispute is the best interest and welfare of the child. *In re Marriage of Quindry*, 223 Ill. App. 3d 735, 737, 585 N.E.2d 1312, 1314 (1992). Likewise, the most important question in removal cases is whether the move is in the best interests of the child. *In re Marriage of Pribble*, 239 Ill. App. 3d 761, 767, 607 N.E.2d 349, 353 (1993). A trial court's determination as to the best interests of the child will not be reversed on appeal unless that determination clearly is against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *In re Marriage of Eckert*, 119 Ill. 2d 316, 328, 518 N.E.2d 1041, 1046 (1988). In this instance, the trial court denied Mother's request to permanently remove the parties' minor son to Ohio, stating that Mother had not met her burden of proving that removal was in the best interests of the child. More importantly, the court determined that the only way Mother could retain primary physical custody of the child was for her to move back to Illinois within 30 days. We agree with Mother that this decision was against the manifest weight of the evidence. We also take issue with the court's alternative custody orders.

¶ 10    The parties separated within three months of moving to Maryville from Chicago. At that point, Mother was not employed. She was able to continue living with her parents in their basement, but this arrangement was not a long-term resolution for either Mother or her son. To make ends meet while searching for a position in advertising, Mother began working part-time at Home Depot. The job with Home Depot was not a career position that would utilize her education and work experience, nor could it adequately provide financially for her and her son. She applied to approximately 30 companies for permanent employment in her career field and received only one offer. While the position offered was quite lucrative, allowed Mother to be financially independent, and would improve the overall quality of life for both Mother and the child, the position was in another state, Ohio. The trial court believed Mother's acceptance of the position and the move to Ohio was premature, as she had only looked four months for a

position in the metropolitan area which would have allowed two active parents in the child's life. The court discounted Mother's job search and her desire to remain in the advertising field. This was error. A custodial parent is not required to exhaust all employment opportunities in Illinois before seeking employment out of state. *In re Marriage of Ludwinski*, 312 Ill. App. 3d 495, 500, 727 N.E.2d 419, 424 (2000). Mother's motives for seeking removal to Ohio were rooted in her desire to obtain gainful employment that offered the potential for professional growth and advancement, not to keep the parties' son from Father as the trial court implied. See *In re Marriage of Bhati*, 397 Ill. App. 3d 53, 63-64, 920 N.E.2d 1147, 1155 (2009); *In re Marriage of Parr*, 345 Ill. App. 3d 371, 378-79, 802 N.E.2d 393, 400-01 (2003); *In re Marriage of Ludwinski*, 312 Ill. App. 3d at 501, 727 N.E.2d at 424. Mother specifically stated she did not even apply for the position in Ohio initially because it was not in the area. Simply because Mother and Father have trouble agreeing on the mechanics of Father's visitation does not mean that Mother has an insincere motive for her move. Additionally, there is no evidence that the problems the parties have with time-sharing and communication would not still exist even if they lived near each other, as was the situation originally. The guardian *ad litem* and the parties all agree that the child is thriving at his daycare and his home in Ohio in general. He is living in a good home with a number of nearby amenities including parks, a community swimming pool, high-quality schools, and homes with younger children. Mother has extended family in Ohio as well, and her parents are trying to sell their home in Maryville so they can move to Ohio and be closer to their grandchild. We also note, as Mother contends, that if she had found a job in Chicago and relocated there initially, the commute would have been similar in time and distance as that in Ohio. There would have been no court oversight regarding the move, and Mother's motives for improving her life as well of that of the child would not have been questioned. Any removal will have an effect on the noncustodial parent's visitation. This does not mean that removal should be denied as long as a reasonable and realistic schedule can be created. *In re Marriage of Eaton*, 269 Ill. App. 3d 507, 515, 646 N.E.2d 635, 642 (1995).

¶ 11       We are also troubled by the court's fashioning of alternative custody orders. Again, if Mother returns to Illinois within 30 days, she is allowed to keep primary physical custody of the child. If she chooses not to return to Illinois within 30 days, she loses that physical custody. Such an alternative order implies that the minor child's best interest will literally change overnight, depending on whether Mother opts to relocate to Illinois within 30 days or stay in Ohio. Such an immediate and radical shift in the determination of what constitutes the "best interests" of the child in a custody proceeding is not contemplated by the kind of alternative order entered by the trial court. It certainly is not contemplated by section 602 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602 (West 2010)), which requires a detailed analysis of those factors to be considered when entering a custody award. Here, the court ignored the statutory mandate and placed Mother in an impossible situation by creating an "either or" decree that had very little to do with the "best interests" of the child. We also do not understand why, given some of the reasons upon which the court based its decision to require Mother to return to Illinois immediately, the court would allow Mother to retain primary physical custody at all, particularly in light of the fact that the court also gave Father sole decision-making authority over their son. Moreover, for Mother to comply with the

court's order to return to Illinois in order to retain primary custody, she will compromise both the financial stability and security of herself and her son. If she returns to Illinois, the present custody and visitation schedule will remain essentially unchanged, but the child will be uprooted from the home and daycare he has now known for over two years. Additionally, as maintenance was denied, Mother will have no income with which to provide for the child, other than child support. Forcing Mother to choose between being gainfully employed or being unemployed in order to have primary custody of her son cannot be in the best interest of the child. We further have trouble with the court's decision to allow Father to have the sole decision-making power for the child, whether or not Mother returns to Illinois. We fail to see how this is in the child's best interest, especially when such a decision undoubtedly will result in additional changes given that Father has exhibited ambivalence toward a number of decisions regarding his son's well-being. For instance, the child's pediatrician recommended that the child see certain specialists regarding potential health issues. Father refused to agree to the visits or testing, believing them to be overkill. Father also refused to switch the child to Mother's insurance, despite the fact it would save him hundreds of dollars a month, because he believed he would not have sufficient information about the child from Mother's health insurance. Yet, Mother has signed all necessary releases for Father to have complete information and has followed all court orders. Undoubtedly, the court viewed Mother as using the child to control Father. Clearly Mother and Father have different personalities and styles of living. Father is more laid back and relaxed in his approach. Mother, who admittedly has a more rigid personality, is dedicated to the child's best interest, from his nutrition and healthcare to his daycare, schooling, and personal safety. This is not unnatural in light of the fact that she is a first-time mother and has primary physical custody of the child. Under the circumstances presented, we conclude that the court's ruling was arbitrary and against the manifest weight of the evidence.

¶ 12    We also find fault with the court's denial of temporary maintenance if we were to uphold the court's decision. Given that Mother was ordered to return to Illinois within 30 days in order to retain primary physical custody, an award of, at a minimum, temporary maintenance would have been in order. If Mother agreed to return, she would have been faced not only with relocation expenses but also with the loss of her full-time income. While the parties' marriage was not long in duration, and Mother is more than capable of supporting herself, she would not have been able to do so immediately once she was forced to give up another lucrative career position. Clearly the court's order was unjustified if Mother were forced to return to Illinois. Given that we are reversing the denial of Mother's request for permanent removal of the child to Ohio, and, as a result thereof, Mother will not need maintenance, we need not address the issue any further.

¶ 13    We turn next to the issue of the credit card debt incurred by both parties. Mother paid the entire bill and only sought reimbursement for Father's expenditures. The court allocated the entire debt to Mother because she failed to meet her burden of proof at trial as to the specific dollar amount owed. The court, however, also assured Mother at trial that having the specific amount listed in her position statement was sufficient. We agree with Mother that it is equitable to require Father to pay for his portion of the marital debt incurred. Given that

Mother agreed at trial to a figure of $2,000 as the amount Father owed, an amount representing almost half of the debt, we modify the court's judgment to reflect that Father is to reimburse Mother $2,000 for the credit card debt incurred during the marriage.

¶ 14 Mother also finds fault with the court allowing certain testimony pertaining to what she terms "settlement negotiations" between the parties, as found in numerous emails, text messages, and written letters sent over the course of the dissolution proceedings. The court did not admit the emails, texts, or letters themselves, but allowed them to be read verbatim over counsel's numerous objections. The court also did not allow Mother's counsel time to retrieve the entire file of such correspondence in order to present individual messages in the proper context. Mother argues that it was impossible for any finder of fact to ignore the contents of such messages, used to portray Mother as being uncooperative, even if they were not admitted into evidence. As a general rule, matters concerning settlement negotiations are not admissible. See *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 960, 858 N.E.2d 530, 540 (2006). Given our resolution of the case, however, we find the error to be harmless. It is clear to everyone that the parties have difficulty agreeing to visitation and travel arrangements. The parties do not need to spend any more time in court or expend any more attorney fees just to rehash this issue.

¶ 15 While we reverse the court's decision denying Mother's request for permanent removal of the minor child to Ohio, we regretfully are forced to remand this cause for additional proceedings. We, however, are remanding this cause on the sole issue of visitation. We are not in a position to set up a workable visitation schedule given that the child, now older, will be entering school in the near future. We urge the court to take into account that even with the parties' disagreements, they have raised a healthy, happy, well-adjusted toddler who is, and has been, thriving in his present living environment and custody arrangement for the past two years. As the guardian *ad litem* recognized, the parties are able to resolve most issues. We strongly encourage the court to seriously consider the thorough report of the guardian *ad litem* and his recommendations for a reasonable visitation schedule in fashioning a new workable arrangement for the parties, while taking into account the overall best interests of the minor child. As noted in *In re Marriage of Parr*, the quality of a parent-child relationship need not be adversely affected just because that relationship becomes a long-distance one. *In re Marriage of Parr*, 345 Ill. App. 3d at 379, 802 N.E.2d at 400.

¶ 16 In summary, we are reversing the court's alternative custody orders and are allowing Mother to remain in Ohio and retain primary physical custody of the parties' minor child while granting joint custody to Mother and Father. In light of this ruling, we are denying Mother maintenance, but we are requiring Father to reimburse Mother the sum of $2,000 for credit card debt incurred by both parties. Finally, we are remanding this cause for further proceedings on the issue of visitation only in order to set up a realistic, workable visitation schedule that allows both parties to continue to be a part of the minor child's life. All remaining issues not addressed are affirmed.

¶ 17 Reversed in part, affirmed in part, and modified in part; cause remanded in part with directions.