*In re* MARRIAGE OF SUSAN ZAMARRIPA-GESUNDHEIT, n/k/a Susan Pfefer, Petitioner-Appellant, and ARIEL ZAMARRIPA-GESUNDHEIT, Respondent-Appellee.

First District (4th Division)  No. 1—87—2537

Opinion filed September 22, 1988.

Arthur M. Berman, of Kirsh, Berman & Hoffenberg, Ltd., of Chicago (Mary Ellen Dienes, of counsel), for appellant.

Jack A. Arfa, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Petitioner, Susan Pfefer (formerly Susan Zamarripa-Gesundheit), appeals from the denial of her petition for leave to remove the parties' daughter, Dafna, 11 years old at the time of the hearing, from Illinois to Seattle, Washington. Petitioner's only argument on appeal is that the trial court's conclusion that the best interest of the child is served by denying the petition for removal is against the manifest weight of the evidence.

Petitioner and respondent, Ariel Zamarripa, were married in 1973. The parties' marriage was dissolved in 1983. Custody of the parties' only child, Dafna, was awarded to petitioner subject to the visitation rights of Ariel. Susan remarried in December of 1986. In March of 1987, Susan filed a petition for leave to remove Dafna from Illinois, to Seattle, Washington. The basis for the removal was that Susan's second husband, Martin Pfefer, was transferred to Seattle.

A hearing was held at which Susan, Martin, and Ariel testified. Dafna was interviewed by the trial judge *in camera.*

Martin testified that he has been employed by the postal service for the last 16 years. He was a letter carrier for six years and has been a postal inspector in Chicago for 10 years. Martin was required to remain in Chicago with the postal service until February 1986. At that time he requested a transfer to Seattle, Washington. This was before he was engaged to Susan. He had always dreamed of living in Seattle and settling with a family. In his opinion, Seattle is one of the most "liveable" cities in the United States. He has visited Seattle several times by himself and with Susan and Dafna.

When Martin initially applied for the transfer, he did not know if and when it would be approved. When he married Susan in December

of 1986, he still did not know if he would be transferred. Martin's transfer was eventually approved in April of 1987. Martin accepted the transfer and was scheduled to report to Seattle on June 22, 1987. Because Martin wanted to remain in Chicago until the matter of removal was resolved, he asked for an extension of time to report to Seattle until July 15, 1987.

Prior to the time that he received notice of the transfer, Martin could have withdrawn his request. However, once the transfer became effective, Martin did not have the option to stay and bid on another job with the postal service in Chicago. Martin testified that if he does not report to Seattle, he is in effect fired. If he were to leave the postal service now, he would lose many of his benefits which have accumulated over the years. Martin stated that he currently earns approximately $50,000 per year, which is what he would earn in Seattle.

Susan testified that Dafna currently attends Solomon Schechter school and, although Susan is not obligated under the divorce decree to pay for a private education, it is important to both Susan and Ariel that Dafna continue her Jewish education. Susan has looked at a private Jewish day school for Dafna in Seattle and has spoken with the vice-principal of the school and several teachers. The Jewish school in Seattle is comparable to the school which Dafna currently attends. Although Dafna is ahead of the Seattle school in Hebrew classes, arrangements would be made so that she could attend special Hebrew classes.

In addition to schools, Susan has found a suitable synagogue and suitable pediatrician. Susan also testified that she currently teaches English as a second language at a community college in Chicago and based on her visits to Seattle, the prospects looked good for comparable employment.

In February of 1987, Susan spoke with Ariel about visitation rights in the event that she moved to Seattle with Martin and Dafna. Susan would allow Ariel to have visitation for a majority of the summer months, during the Passover school break, and during winter school vacation. She also suggested that Dafna could visit Ariel during the Jewish New Year for four days and also for weekends whenever secular and Jewish holidays created three- or four-day weekends. Susan further stated that Dafna could telephone Ariel weekly at Susan's expense.

Susan also talked to Ariel about putting Ariel's child-support payments into an escrow fund to be allocated entirely to transportation. Susan testified that she has never paid more than $200 round trip to fly to Seattle. Ariel is now required to pay 20% of his net income. Al-

though his income fluctuates, Ariel's child-support payments usually average approximately $300 per month.

Ariel testified that under the dissolution of marriage decree, he has liberal visitation rights. He sees Dafna every other weekend and every Sabbath from Friday night to Saturday night. Ariel has been a Hebrew teacher for approximately seven years and frequently helps Dafna with her Hebrew lessons. He has spoken to Dafna in Hebrew since infancy. He also teaches Dafna Spanish.

Ariel also testified that he participates in various programs at Dafna's school. For example, Ariel has taught improvisational drama workshops and has attended various ceremonies which mark the beginning of the Sabbath. In addition to going to summer camp with Dafna every year, Ariel testified that he also enjoys taking Dafna to plays and concerts.

Ariel stated that he is entitled to one week vacation and six paid sick days. He does not get paid for any other days he takes off.

The trial judge interviewed Dafna *in camera*. Dafna is enrolled in sixth grade at the Solomon Schechter day school. Dafna testified that she did not like Seattle because it was "too small" and "like a farm." She also testified that she does not "want to leave her dad and everything else."

Petitions for removal are governed by section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 609(a)). This section provides:

> "(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal. When such removal is permitted, the court may require the party removing such child or children from Illinois to give reasonable security guaranteeing the return of such children."

The Illinois Supreme Court recently addressed the issue of the custodial parents' right to remove a child to another State in the case of *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041. In *Eckert*, the supreme court rejected what it detected as a trend in removal cases whereby the custodial parent is presumptively entitled to removal unless rather strong negative circumstances indicated against it. The court emphasized that the amendment to the removal statute specifically states that " 'the burden of proving that such removal is in the best interests of such child or children is on the

party seeking the removal.' " *Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.

■ While emphasizing that the burden of proof was on the custodial parent, the court, on several occasions, reiterated that the touchstone of the proceeding was a determination of the best interest of the child. After concluding that this determination depended to a great extent on the circumstances of each case, the court enumerated several factors that may aid a trial court in determining the best interest of the child. These factors are: (1) the likelihood of enhancing the general quality of life for both the custodial parent and the child by allowing the move; (2) the motives of both parents: the motive of the custodial parent in seeking removal and the motive of the noncustodial parent in resisting the removal; and (3) the visitation rights of the noncustodial parent, which involves a determination of whether a realistic and reasonable visitation schedule can be reached if the move is allowed. *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.

We will examine what is in the best interest of Dafna in light of these factors. There is no suggestion in the record that the motive of either of the parents in seeking or resisting removal was improper. Consequently, only the first and third factors will be considered.

The first factor, which concerns the likelihood of enhancing the general quality of life, looks to both the custodial parent and the child. As far as Dafna is concerned, we cannot say that the general quality of her life will be directly enhanced by a move to Seattle. If Dafna moves to Seattle, she will receive an education at a Jewish day school comparable to the education she presently receives at the Solomon Schechter school. She will continue her practice of attending a synagogue on a regular basis. Her financial support will basically remain the same.

■ Dafna has expressed certain reservations about moving to Seattle because it is "too small" and "too much like a farm." A child undoubtedly has a wide range of emotional needs and a number of preferences regarding friends, church, school, and neighborhood. However, generally speaking, these considerations are subject to the discretion of the custodial parent. A move across town to a different neighborhood or enrollment in a different school are all decisions for the custodial parent and not the court. While this matter is properly before the court because it comes under the statute regarding removal of a child from the jurisdiction, the court should be circumspect in intruding in these decisions when, except for the fact that this is a removal situation, it would not otherwise be involved.

Dafna does make one comment that bears consideration. She

stated that she did not want to leave her father. However, this comment is more appropriately considered when we address the factor regarding visitation rights.

■ While the move to Seattle may not directly enhance the general quality of life for Dafna, it will significantly affect the general quality of life for Susan, the custodial parent, and therefore, indirectly beneficially affect Dafna's quality of life. Dafna is part of a household which consists of Martin, Susan, and Dafna. What is in Dafna's best interest cannot be addressed without considering the best interest of the other members of the household in which she lives. It is clear from the record that Susan's second husband, Martin, wants to move to Seattle. He testified that he visited Seattle several times in the past and had always dreamed of living there when he settled down to have a family. Although Martin applied for a transfer prior to his engagement to Susan, the transfer was not approved until after Susan and Martin were married. We think it is significant that the decision to move was initiated by Martin, and although it may be influenced by Susan, it is still Martin's decision to transfer and not within Susan's direct control.

It is also clear from the record that the move would advance neither Susan's nor Martin's career. The move is a lateral one for Martin. Thus, from a financial point of view, Martin's salary in Seattle will be the same as his salary in Illinois. If removal is denied, the record is unclear as to whether Martin could find comparable employment in Illinois. The only testimony regarding this point was provided by Martin, who stated that because he accepted the transfer, he was in effect fired from the postal service in Chicago.

However, although the move does not appear to be based on financial considerations alone, the move would enhance the general quality of life for the family because, in Martin's opinion, Seattle is the place he wants to raise a family. Because Susan wants to be with her husband, we can only conclude that the couple and therefore the family which consists of Martin, Susan, and Dafna will be happier by allowing removal. If removal was denied and Martin chose to remain in Illinois with his wife, he would be frustrated at not being able to pursue what for him is best for his family. If Martin moves to Seattle and removal is denied, then Susan is left with the choice of leaving Dafna behind or letting her new husband go ahead without her.

■ In addition to considering the impact on the quality of life of Dafna and Susan, we must also consider how Ariel's visitation rights will be affected by a move to Seattle. In *Eckert*, the court observed that it is in the best interest of a child to have a healthy and close

relationship with both parents and therefore the visitation rights of the noncustodial parent should be carefully considered. (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045.) In making such a consideration, the court should assess a realistic and reasonable visitation schedule. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045-46.

Susan testified as to a proposed schedule which would specifically allow Dafna to live with Ariel over the summer months and during various school breaks. The transportation costs would come out of Ariel's child-custody payments. Dafna would be able to speak with Ariel once a week at Susan's expense. Ariel testified that he did not feel this was a reasonable visitation arrangement because his work schedule does not allow him much vacation time and that he would prefer to have regular contact with Dafna rather than exclusive contact for long periods of time.

While we recognize the importance of preserving the child's relationship with the father, this factor must be weighed against the factor suggested by *Eckert* regarding the enhancement of the quality of life for both Susan and Dafna. On balance, we do not think that the interests of the custodial mother should be subordinated to those of the noncustodial father. While different than what Ariel has been accustomed to, we believe that the liberal visitation rights proposed by Susan provide Ariel with an adequate means to foster his relationship with Dafna. Although Ariel would prefer consistent day-to-day contact with Dafna, this preference is insufficient to chain Susan to the State of Illinois.

For the foregoing reasons, the decision of the trial court is reversed.

Reversed.

JOHNSON and McMORROW, JJ., concur.