*In re* MARRIAGE OF KAREN L. BERK, Petitioner-Appellant, and JAMIE BERK, Respondent-Appellee.

Second District   No. 2—90—1009

Opinion filed July 1, 1991.

Hayes, Pesek & Webb, of Oak Brook (Charles J. Pesek, of counsel), for appellant.

Lehrer, Flaherty & Canavan, P.C., of Wheaton (Maureen Flaherty, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Karen Berk, appeals from the trial court's judgment denying her petition for removal of children from Illinois. We affirm.

The marriage of Karen and Jamie Berk was dissolved November 24, 1984. Karen was granted sole custody of the minor children, Allison, born in 1975, and Robbie, born in 1978. Karen and the children lived in Batavia, as did Jamie. In December 1989 Karen decided to marry Dave Guilbault, an optometrist living in Humboldt, Saskatchewan, Canada. Jamie would not consent to the removal of the children to Humboldt, so Karen filed her petition for leave to remove the children on April 4, 1990. Karen married Guilbault in June and lived with him in Humboldt. Karen and the children returned to Batavia for the hearing and to begin school. Following the hearing, the court denied Karen's petition. This appeal followed.

■ Leave to remove a child from the State of Illinois is governed by section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act), which states in relevant part:

> "(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." (Ill. Rev. Stat. 1989, ch. 40, par. 609.)

On review, a strong and compelling presumption exists in favor of the trial court's determination; this court will not disturb the trial court's judgment unless that judgment results in manifest injustice or is against the manifest weight of the evidence. *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 330.

The trial court found "that the testimony has established only that there would be a neutral impact upon the children by a move" and that "[t]he evidence here is not sufficient to meet that burden" set out in section 609 of the Act. Therefore, it denied the petition.

Karen now contends that the trial court's judgment was against the manifest weight of the evidence. The court heard testimony that Jamie "religiously" exercised his visitation rights and often attended or was involved in the children's extracurricular activities. Most members of the children's extended family, including those on Karen's side, live in Illinois, many not far from the children's Batavia home. Jamie had remarried approximately 2½ years before the hearing, and the children had a good relationship with Jamie and his wife.

Karen testified that she had visited Guilbault for a total of approximately 25 days over the course of a year before she decided to marry him. The children only had about 10 days' contact with Guilbault before their mother's marriage. Karen also testified about the living conditions and environment in Saskatchewan. Humboldt is a rural community of about 5,000 people located approximately 1,300 miles from Chicago and 200 miles from the Unites States' border. Saskatoon, a metropolitan area of approximately 185,000 people, is about 60 miles away, and Regina, capital of Saskatchewan, is about 140 miles away. Karen testified that cultural events were available in both of those cities. Guilbault owned a five-bedroom home on a large lot in Humboldt within walking distance of the Humboldt schools. Karen testified that the Humboldt schools were comparable to the Batavia schools in curriculum, facilities and extracurricular activities. Karen also testified that Guilbault earned approximately $100,000 Canadian (approximately $86,800 American at that time) and that she had arranged a job in Humboldt, contingent upon emigration, that would pay her $26,000 Canadian; she earned $24,000 American at her job in the United States. Finally, Karen testified that the quality of her life, and that of the children, would be greatly enhanced by the move to Humboldt, since a family unit would be created, and she could live with the man she loved.

Jamie testified to some of the difficulties the children would encounter because of such a move, including adapting to a new culture and a rural environment, leaving friends and family far behind, and

traveling between Humboldt and Chicago, a difficult proposition because of expensive and limited air transport between Chicago and Saskatchewan. Jamie also pointed out differences between the educational systems, such as the fact that American history is not taught in Canada and that only 45% of the children in Humboldt attend college. He also stated that removal of the children to Humboldt would damage his ability to maintain quality time spent with his children; the offer of extended visitation in the summer was not comparable to the current system of visitation every other weekend.

The court also conducted *in camera* interviews with the children. Allison, age 14, told the court that she had a good relationship with both parents and their spouses. She stated that she would miss her father and her friends if she moved to Canada, but she was "getting bored with" Batavia and wanted to move to Canada. She also told the court that her decision had nothing to do with wanting to stay with her mother:

> "I mean if my dad was moving up to Canada, I would want to move up there because I just think—I think it's a different place and stuff."

When asked by the court how she would decide this case, Allison said, "It would be a hard question. I don't know."

Robbie, age 12, also stated that he wished to move to Canada "[b]ecause it's funner [*sic*] up there and a new experience." He would be "[a] little upset" if he remained in Batavia with Jamie, but he "would get over it." He also told the court that he would miss Jamie and his friends if he moved to Canada.

■ A determination of the best interests of a child must be made on the factual circumstances of each case, not on the basis of a bright-line test. (*Eckert*, 119 Ill. 2d at 326.) In *Eckert*, our supreme court enunciated the following several factors to consider in determining the best interests of a child:

> "The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. [Citations.] The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. [Citations.] Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. [Citation.] It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial parent should be carefully

considered. [Citations.] Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed. [Citation.]" (*Eckert*, 119 Ill. 2d at 326-27.)

Karen first argues that the court failed to apply properly the *Eckert* factors in that it failed to consider the enhancement in Karen's quality of life that would result from removal of the children to Humboldt. Karen admits that the court stated that it considered the effect of the proposed move on the quality of life for both the children and Karen. However, Karen then points out that the court did not specifically mention the effect on Karen's quality of life in its oral decision; therefore, according to Karen, the court did not properly apply the *Eckert* standard. We disagree.

We first note that the court stated:

"It is beyond the scope of this oral decision to recite in full detail all of the facts that were heard and considered by this court in reaching its decision and the same is not necessary.

But for the help of counsel and the parties, and for anyone reviewing the record, I would like to make the following comments."

The fact that the court did not list specifically the impact on Karen's quality of life, and thus that of the children, does not mean that the court did not consider it. The court specifically stated that it considered the factors set out in *Eckert*; the court is not required to announce the weight and significance it attaches to all evidence heard. A brief statement indicating the court's decision and its reasons for reaching that decision is sufficient. (See *People v. Lieberman* (1989), 186 Ill. App. 3d 277, 282.) We conclude that the court properly considered the "quality of life" factor set out in *Eckert*.

Karen next argues that the court's ruling was against the manifest weight of the evidence because the legislature has expressed a strong presumption in favor of continuing existing custodial relationships. She contends that the denial of her petition for removal would of necessity cause a change in the children's custody. To support this argument, Karen cites section 610(b) of the Act, which is concerned with modifications of custody judgments. (See Ill. Rev. Stat. 1989, ch. 40, par. 610(b).) While admitting that a removal petition is not a petition to modify (see *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 150), Karen states:

"[T]he practical consequences of granting or denying the petition here can not [*sic*] be ignored ***. [She] had thus made a strong irrevocable commitment to the move and it was clear

she intended to move to Humboldt whether the removal petition was granted or denied. Therefore, denial of the petition necessarily meant a change in custody."

The only reason that a change of custody would occur in this case is because Karen has made an "irrevocable commitment" to move, even though the court determined that the move was not in the best interests of the children. Karen, in her own brief, argues that the decision was made to move even if the children could not come with her. Custodial parents and their spouses must remember that they do not make decisions in a vacuum. Decisions must be made in an environment in which the best interests of the children are paramount. This State's courts are in place to protect the children's interests and will not be intimidated or threatened by "irrevocable" actions of parents. Karen has made her choice to move to Humboldt. She must now live with the consequences of that decision. The presumption of section 610 of the Act is not applicable here. The preservation of the existing family unit is an element to be considered in determining the best interests of the children, but it is only one of many elements. We do not conclude that the court's decision was against the manifest weight of the evidence in light of this argument.

■ Karen further argues that the court's ruling was against the manifest weight of the evidence because the move would substantially improve the quality of her own life. While we do not dispute the obvious benefits that would accrue to Karen if she were allowed to remove the children to Humboldt, we conclude that Karen misconstrues the *Eckert* decision and overstates the importance of the impact of the move on her own quality of life. The trial court's focus at all times remains on the best interests of the children. The increase in the custodial parent's quality of life is only important insofar as it increases the children's quality of life and furthers the children's best interests. Karen cites a string of cases for the proposition that a woman's wish to live with her husband was sufficiently compelling to warrant removal of children from the State. Four of these cases, *In re Marriage of Shalashnow* (1987), 159 Ill. App. 3d 760, *In re Marriage of Lichtenstein* (1986), 139 Ill. App. 3d 881, *In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, and *In re Marriage of Feliciano* (1981), 103 Ill. App. 3d 666, were decided prior to *Eckert* and employed a lesser burden of proof explicitly rejected in *Eckert*. (See *Eckert*, 119 Ill. 2d at 325-26.) These cases are of no value. We further wish to repeat here that the best interests of a child must be determined on the facts of each case, not by a bright-line test (*Eckert*, 119 Ill. 2d at 326); therefore, citation to and discussion of prior removal cases is of little value

in determining whether removal should be allowed. However, we wish to comment on *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, cited by Karen. *Gratz* is distinguishable from the case before us, as this court therein cited health benefits accruing to both the child and the spouse resulting from the removal of the child to Arizona. However, Karen argues that the health factors were not the motivating factor behind the decision but "were developed solely to provide justification for the move which was motivated by the desire of the custodial parent to move with her spouse to Arizona." We are unaware of how Karen gained this insight and furthermore note that this court based its decision on the evidence present in the record, not on a secret motivation of one of the parties. Karen also cites *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, and *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, two cases which do rely to a great extent on the reasoning that a positive effect on the custodial parent's quality of life, which indirectly enhances the children's quality of life, is enough to prove the move to be in the child's best interest. For example, in *Zamarripa-Gesundheit*, the court stated:

> "[T]he move would enhance the general quality of life for the family because, in Martin's opinion, Seattle is the place he wants to raise a family. Because Susan wants to be with her husband, we can only conclude that the couple and therefore the family which consists of Martin, Susan, and Dafna will be happier by allowing removal. If removal was denied and Martin chose to remain in Illinois with his wife, he would be frustrated at not being able to pursue what for him is best for his family. If Martin moves to Seattle and removal is denied, then Susan is left with the choice of leaving Dafna behind or letting her new husband go ahead without her." (*Zamarripa-Gesundheit*, 175 Ill. App. 3d at 189.)

To the extent that *Taylor* and *Zamarripa-Gesundheit* rely on the rationale that the increase in the custodial parent's quality of life is sufficient to prove a removal to be in a child's best interests, we reject those cases and their rationale. It is virtually impossible to envision a situation wherein the custodial parent does not wish to live with a new spouse. If the obvious happiness the spouse would receive from being able to live with a new spouse were sufficient to prove removal in the child's best interests, court supervision of the proceedings would be unnecessary, and at best, ceremonial. A custodial parent must prove more than his or her own desire to live with a new spouse to prove that a child's best interests will be served by removal. The court here properly considered the benefit to Karen and included it in

its equation that resulted in a neutral impact upon the children's best interests. The court did not err in its consideration. The court here held that "viewing this evidence as a whole," *including* the impact on Karen's quality of life, "there would be a neutral impact upon the children" by allowing the removal. We conclude that the trial court properly considered the impact of removal on Karen's quality of life, along with other factors, in determining the best interests of the children. Therefore, it committed no error.

■ Karen raises other arguments that fall under the heading of "against the manifest weight of the evidence," including the increased standard of living to be allegedly achieved by living in Humboldt and the wishes of the children to move to Humboldt. Our thorough review of the record leads us to conclude that the court adequately considered these factors and made its decision in accordance with the weight of the evidence. An increased standard of living, while beneficial to the children, will occur in almost every case of remarriage, as another income is added to the family. While it must be considered, it cannot alone be determinative. As to the children's wishes, the court stated that it "consider[ed] the wishes of the children in this regard as expressed to this court." The court found those wishes "not controlling," but further stated that it would give those wishes "the appropriate weight." From the record, we cannot conclude that the court did not adequately consider the children's wishes. In addition, the testimony of the children does not show that their wishes to move were strong or based on anything other than achieving a change of scenery. We conclude that the court adequately considered the children's wishes.

■ Finally, Karen argues that reasonable alternative visitation was available. The court heard testimony regarding the difficulty of air travel between Humboldt and Chicago and also Karen's offer to drive the children to Chicago for extended summer visits. Karen proposed visitation of six weeks in the summer, alternating Christmas and spring break vacations and three to six days when Jamie was in Regina, Saskatchewan, on business. Taking Karen's calculations at face value, this totals 58 days' visitation annually. Jamie's current visitation includes alternating weekends from Friday evening to Sunday evening, summer vacation of one to two weeks and five holiday visitations for a total of 71 days. Karen offers 18% fewer days, substantially fewer than under the existing visitation. While an exact day-for-day rescheduling of visitation is not always possible or necessary, a reduction of visitation by almost one-fifth is substantial. In light of this discrepancy and the aforementioned difficulty in travel between

the two cities, we conclude that the trial court's decision was not against the manifest weight of the evidence, as the court could easily find the required changes in visitation unreasonable and unrealistic under the *Eckert* criteria.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and INGLIS, JJ., concur.