*In re* MARRIAGE OF SORYIA COLLINGBOURNE, Petitioner-Appellee, and
GEOFF B. COLLINGBOURNE, Respondent-Appellant.

Second District    No. 2—01—1079

Opinion filed July 30, 2002.

Kevin G. Drendel and Susan B. Tatnall, both of Drendel, Tatnall, Lonergan, Drendel, P.C., of Batavia, for appellant.

Steven N. Peskind, of Law Offices of Steven N. Peskind & Associates, of Geneva, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Soryia Collingbourne, filed a petition to remove her minor child, Tyler, from the State of Illinois. The trial court granted the petition. Respondent, Geoff B. Collingbourne, the father, appeals. We reverse.

Petitioner and respondent dissolved their marriage on September 1, 1999. Two children had been born to the parties during their marriage—Geoff, born January 11, 1986, and Tyler, born January 10, 1991. The judgment for dissolution of marriage incorporated a marital settlement agreement and a joint parenting agreement. Pursuant to the terms of the joint parenting agreement, the parties were awarded joint custody of the children. However, the primary residential custody of the children was split. Respondent had primary residential custody of Geoff, and petitioner had primary residential custody of Tyler.

On June 15, 2001, petitioner filed a petition to remove Tyler from the State of Illinois to the State of Massachusetts. An evidentiary hearing was conducted. Petitioner testified that she was engaged to be married to Mark Rothman, who resides in Sharon, Massachusetts, a town located one-half hour from Boston and one-half hour from Providence, Rhode Island. She wanted to move to Sharon, Massachusetts, with Tyler so she could be with Mr. Rothman. Mr. Rothman owns a three-bedroom home on 1.5 acres in Sharon and owns a sales manufacturing business.

At the time of the hearing, Tyler was 10 years old. The apartment he shared with petitioner had two bedrooms and two baths and did not have a yard. Petitioner is employed as a sales manager for Pet-Ag, Inc., located in Hampshire, earning approximately $50,000 annually and working 40 hours per week. If petitioner moved to Massachusetts, she would work for Mr. Rothman's company in sales and would work during Tyler's school hours only. Petitioner's current position required

her to place Tyler in day care from the end of the school day at 2:30 p.m. until she picks him up between 5:30 and 6 p.m.

Tyler attends Hampshire Elementary School. Petitioner testified that she hired a company known as School Match and purchased information concerning the school system in Sharon, Massachusetts. In her personal opinion, the school system in Sharon would offer Tyler a wonderful education that would be superior to his present school system. Tyler would attend Heights Elementary school, which is located seven minutes from Mr. Rothman's home and offers a wide range of extracurricular activities.

Petitioner proposed a visitation schedule for Tyler in the event the court granted her petition for removal. The proposal would allow Tyler visitation in Illinois with his father for 8 to 10 weeks during the summer months, during two spring breaks that occur in February and April, during Thanksgiving break, and for a portion of the Christmas break.

Petitioner testified on cross-examination that respondent's visitation with Tyler, which was once flexible, had become more scheduled. She related a vacation with Mr. Rothman and Tyler wherein Tyler became unhappy and returned to respondent after three days. She is aware that Tyler is very unhappy with the day-care center he presently attends and that respondent's sister and present wife have offered to watch him some of the days. Petitioner has not followed up to obtain alternate arrangements.

Mark Rothman resides in Sharon, Massachusetts, a town of approximately 16,000 residents. He described the community as affluent and upscale with some of the finest schools in the state. Mr. Rothman's business does not allow him to live in the State of Illinois. He has offered petitioner a sales position in his company that would allow her to structure her own work hours. Mr. Rothman testified that he has the financial means to assist in fostering respondent's relationship with Tyler through out-of-town visitation, computers, e-mail, phone calls, and visits back and forth by airplane.

Mr. Rothman has made frequent trips between Boston and Chicago. The flight time is two hours, and he has experienced delays and cancellation in flights. The travel from his home to the Boston airport is approximately 45 minutes.

Amy Joan Conry was Tyler's fourth-grade teacher. She described Tyler as an above-average student who is well-behaved. Ms. Conry has been involved with petitioner with respect to Tyler's education through telephone calls and various school meetings. She saw respondent one time at an open house but has not been involved with him concerning Tyler's education.

Respondent resides in Hampshire, Illinois, with his wife, Carol Lynn, her 6-year-old son, and his 15-year-old son, Geoff. They live in a single-family home consisting of three bedrooms with a backyard. His home is located eight blocks from Hampshire Elementary School, where Tyler has attended since kindergarten.

Respondent is employed as an electrician. He works 40 hours per week from 7 a.m. until 2:30 or 3 p.m. His annual earnings at a rate of $33 per hour total $70,000. Respondent's wife, Carol Lynn, is employed part-time as an ultrasound technician. She works three days per week from 8 a.m. until 5 p.m. The current visitation schedule for Tyler allows respondent to have Tyler at his home two weekends every month, starting on Friday evening and ending on Sunday evening. Respondent testified that he has never missed his weekend visitation with Tyler. The allotted visitation was shortened only if respondent had to work for half a day on a Saturday, which meant he would miss four hours at the most. During this time, Tyler stayed with either his brother or his mother. In the past respondent's visitation with Tyler was very flexible, occurring virtually any time that he wanted to see Tyler and was able to care for him, including both weekdays and weekends. In the months prior to the hearing, petitioner would not allow respondent to pick Tyler up from school and take him home until she picked him up after work. Instead, petitioner enrolled Tyler in day care.

Respondent has family living in the Hampshire area, including several cousins, aunts, uncles, and grandparents. Tyler would see his extended family often but now only sees them approximately one time per month.

Respondent described his relationship with Tyler as very close and loving. He opposes petitioner's move to Massachusetts with Tyler. Respondent believes it is in Tyler's best interests to stay in Illinois with him and his extended family. He described his wife's relationship with Tyler as good. There have been some problems with jealously between Tyler and Carol Lynn's son, but respondent indicated the relationship is getting better.

The trial court conducted an *in camera* interview of Tyler. At the time of the interview, Tyler was 10 years old. When asked about his thoughts concerning Boston and a proposed move, he responded that it was "okay." He stated that he was "scared" about the move because he does not want to leave his father. He further stated that he has informed his mother he does not want to move to Boston and was unsure of whether the proposed move was even going to happen.

He stated that his mother travels out of town for work three times per month and that either his father or his mother's friend will watch him. He also indicated that he does not like the day-care center he at-

tends because most of the children are babies. Tyler has traveled alone on an airplane in the past. He is not afraid to fly alone.

Tyler stated that he does not want to move to Boston. He does not want to leave his father, brother, friends, and family on his father's side, including his grandparents, aunts, and uncles.

After considering the testimony at the evidentiary hearing, arguments of the parties, and the *in camera* interview with Tyler, the trial court granted the petition for removal. In a written order, the trial court considered the requirements of section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 2000)) as well as the decision of our supreme court in *In re Marriage of Eckert*, 119 Ill. 2d 316 (1988). The trial court found that neither party had an improper motive in requesting or objecting to the removal. The trial court also found that there was no evidence of a substantial direct benefit to Tyler by the proposed move and that, consequently, any benefit to Tyler had to be indirect.

The trial court considered that the move would allow petitioner to enroll Tyler in a school system with superior opportunities, obtain a job with a greater salary, conform her work to Tyler's school schedule, and afford air transportation to enable Tyler to visit Illinois by plane. Although the move would separate Tyler from his father, brother, and extended family, and require him to take 9 or 10 extended trips by airplane, the trial court found that the evidence favored the proposed move since petitioner will substantially enhance her quality of life and thus indirectly benefit Tyler. In the court's view, the best interests of Tyler were served by allowing petitioner to remove him to Massachusetts, subject to the following visitation schedule:

8 to 10 weeks during summer vacation;

1 week during February break;

1 week during spring break;

Every Thanksgiving holiday from Thursday to Sunday;

1 week during Christmas break; and

Such other times as agreed by the parties.

This appeal followed.

■ Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act governs petitions for removal. 750 ILCS 5/609(a) (West 2000). The statute provides as follows:

"The court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 2000).

■ In a removal case, the paramount question is whether removal is in the best interests of the child. *In re Marriage of Eckert*, 119 Ill. 2d 316, 325 (1988). When making a determination as to the best interests of the child, there is no bright-line test. Rather, the decision must be made on a case-by-case basis, depending, to a great extent, on the circumstances of each case. *Eckert*, 119 Ill. 2d at 326. A trial court's determination as to the best interests of the child will not be reversed on appeal unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Eckert*, 119 Ill. 2d at 328.

■ In making a determination as to the best interests of the child, the trial court should hear all relevant evidence. *Eckert*, 119 Ill. 2d at 326. In *Eckert*, our supreme court identified five factors to consider in determining whether removal is in the child's best interest:

(1) whether the proposed move will enhance the general quality of life for both the custodial parent and the child;

(2) the motives of the custodial parent in pursuing the removal;

(3) the motives of the noncustodial parent in resisting the removal;

(4) the visitation rights of the noncustodial parent; and

(5) whether a realistic and reasonable visitation schedule can be reached if the move is allowed.

See *Eckert*, 119 Ill. 2d at 326-27.

Respondent contends that the trial court's ruling is against the manifest weight of the evidence. He asserts that petitioner failed to sustain the burden of proving that removal is in the best interest of Tyler under the factors outlined in *Eckert*. He further asserts that the evidence did not show any direct benefit to Tyler by the proposed move, but only indirect benefit due to an improved lifestyle for petitioner, which is insufficient to sustain the burden of proving that the move was in the child's best interest.

Turning to the factors outlined in *Eckert*, the trial court made an express finding that neither parent's motives in seeking or resisting removal were improper. We have found nothing in the record to the contrary. Therefore, we will consider the remaining factors set forth in *Eckert*.

Under *Eckert*, the trial court must consider whether the removal would enhance the general quality of life of both the parent and the minor child. Evidence that a court may consider in determining whether the quality of life of the parent and the child would be enhanced includes the possibility of a higher paying job, better schools, and improved general opportunities. See *In re Marriage of Pfeiffer*, 237 Ill. App. 3d 510, 513-14 (1992).

As the trial court concluded in its written opinion, the evidence did not illustrate that there would be a substantial direct benefit to Tyler by moving to Massachusetts. Although petitioner presented evidence in an effort to establish that Tyler would receive a superior education in the Sharon school system, in our view, Tyler's present school system is comparable to that in Massachusetts. Further, both locations are within equal distance from a large metropolitan area with the accompanying educational and cultural amenities.

The majority of the evidence related to benefits petitioner would derive by moving to Massachusetts, remarrying, and living with the man she loves. As we held in *In re Marriage of Berk*, 215 Ill. App. 3d 459, 465-67 (1991), it is insufficient to focus only on the improvement of the custodial parent's life. Rather, the improvement in the custodial parent's quality of life is only important insofar as it increases and furthers the child's quality of life. *Berk*, 215 Ill. App. 3d at 465. While respondent presented evidence that she would enjoy an increased standard of living, live in a larger home, and earn a greater income working for her prospective husband's company, an increased standard of living will occur in almost every case of remarriage, as we stated in *Berk*. As such, the living arrangements proposed by the move to Massachusetts are considered, but cannot alone be determinative.

Under *Eckert*, it is in the best interests of a child to maintain a healthy and close relationship with both parents, as well as other family members. *Eckert*, 119 Ill. 2d at 326-27. Therefore, the visitation rights of the noncustodial parent and whether a realistic and reasonable visitation schedule can be reached if the move is allowed must be considered. *Eckert*, 119 Ill. 2d at 326-27.

A visitation schedule is reasonable when it will preserve and foster the child's relationship with the noncustodial parent. *In re Marriage of Gibbs*, 268 Ill. App. 3d 962, 968-69 (1994). When the noncustodial parent has diligently exercised his rights, the court should not interfere with those rights for frivolous, unpersuasive, or inadequate reasons. *Gibbs*, 268 Ill. App. 3d at 968-69. When a parent has diligently exercised visitation rights, a court should be reluctant to interfere with those rights by allowing removal for unpersuasive or inadequate reasons. *Eckert*, 119 Ill. 2d at 327.

Respondent has diligently exercised his visitation rights with Tyler. He has not missed his biweekly weekend visits with Tyler. Further, the evidence indicates that, by picking Tyler up from school and staying with him until petitioner retrieved him after work, respondent has visited with Tyler even more often than set forth in the marital settlement agreement. The time that respondent has spent with Tyler has been at respondent's home, which has enabled Tyler to spend time also with his natural brother, Geoff.

The visitation schedule set forth in the trial court's order grants respondent approximately 96 days per year with Tyler. Although the total number of days that respondent will be with Tyler is comparable to the bimonthly/every-other-holiday visitation schedule in use, the schedule ordered by the court will require Tyler to be away from his Massachusetts home during every school break for substantial periods of time. As Tyler grows older and becomes accustomed to his Massachusetts home and school, it is likely that he will form relationships with friends from school and his neighborhood. While it is important for Tyler to visit his father, brother, and extended family in Illinois, it is also important that Tyler adjust to his new home in Massachusetts. Requiring Tyler to be away from his friends and home for every school break is not likely to solidify Tyler's roots within his new community, foster close relationships with his peers, or further develop his relationship with his mother and Mr. Rothman. Additionally, the visitation schedule set forth by the trial court will require Tyler to travel by air 9 to 10 times per year for visitation, which is not only time consuming, but hectic and burdensome for adults and children alike.

■ In our view, the evidence presented at the hearing, in conjunction with the factors set forth in *Eckert*, indicates that removing Tyler to Massachusetts is not in his best interest. Although the move may provide an indirect benefit to Tyler by virtue of the benefits that petitioner will experience by marrying Mr. Rothman, we cannot conclude that this evidence outweighs Tyler's interest in maintaining a close relationship with his father, natural brother, and extended family in Illinois. While the proposed visitation schedule would allow substantial visitation with respondent for lengthy periods of time, the fact remains that respondent has work responsibilities that would preclude him from spending each day with Tyler and would require care and supervision by another adult during his visitation hours. Under the facts of this case, we determine that the trial court's decision to grant the petition for removal was against the manifest weight of the evidence.

The judgment of the circuit court of Kane County is reversed.

Reversed.

BYRNE, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent.

In my view, the majority's reasons for reversing the ruling of the trial court amount to nothing more than a substitution of its factual

findings for those of the trial court. It is well established that a trial court's determination of whether removal is in a child's best interests should not be reversed unless it is clearly against the manifest weight of evidence and it has resulted in manifest injustice. *In re Marriage of Eckert*, 119 Ill. 2d 316, 328 (1988). Precisely because removal actions are so fact specific, and because of the trial court's far superior ability to observe and evaluate the parents and children, the *Eckert* court enunciated a policy of deference to the trial court ruling as the appropriate standard of review. *Eckert*, 119 Ill. 2d at 330.

In rendering its decision, the trial court evaluated the *Eckert* factors. It found no improper motive on either parent's part in seeking or opposing removal. The court further found that (1) petitioner would substantially enhance her quality of life by moving to Massachusetts and thus the move would indirectly benefit Tyler; (2) petitioner could not find employment in Illinois similar to her employment opportunity in Massachusetts; (3) petitioner's fiancé could assist petitioner financially but could not relocate his business to Illinois; (4) the school systems in Illinois and Massachusetts are comparable and reasonably close to a large metropolitan area; (5) the "enhanced quality of life" factor shows that the existing joint custody arrangement has already resulted in the separation of Tyler and his brother because they live in separate households, attend separate schools, and have a five-year age difference, which reasonably has or will shortly create a diversity of interest between them; (6) under the proposed visitation schedule, the actual time Tyler would spend with his father would be comparable to that under the existing schedule; and (7) the traveling time involved would not be more than if petitioner were to move to southern Illinois.

In its analysis, the majority fails to demonstrate that the trial court's findings were contrary to the manifest weight of the evidence. The majority notes that moving to Massachusetts would benefit Tyler only indirectly through the direct benefit his mother would derive from marrying her fiancé. The majority goes on to say that such an indirect benefit is not determinative. The trial court made note of this proposition as well in its written decision, and there is no indication that it placed too much emphasis on the "indirect benefit" factor. Thus, I fail to see how the court's treatment of this issue renders its decision contrary to the manifest weight of the evidence.

The majority also finds fault with the trial court's determinations regarding the proposed visitation schedule, stating that it would require Tyler to spend too much time away from his new home in Massachusetts. The majority seems to forget that it is not our job to second-guess the trial court's decisions on such matters, but only to

determine whether they are against the manifest weight of the evidence. The trial court in this case fashioned a schedule that would give Tyler approximately the same amount of time with his father that he has now. In order to do so, however, Tyler must travel to Illinois during most of his school vacations. While this proposed schedule is more inconvenient than the current arrangement, it is a reasonable and realistic method of handling an obviously disruptive event in Tyler's life. It also would allow Tyler to maintain a close relationship with his father despite the physical distance between them.

In sum, I would affirm the trial court because the trial court was in the best position to observe Tyler, his parents, and the other witnesses and to evaluate their temperaments, predilections and capabilities in determining Tyler's best interest. The majority's reasons for reversing the trial court do nothing more than substitute its viewpoints for those of the trial court and, therefore, violate the requirement that the reviewing court give deference to the trial court's findings.