*In re* MARRIAGE OF MARY SALE, n/k/a Mary Newton, Petitioner-Appellant, and SCOTT SALE, Respondent-Appellee.

Fifth District    No. 5—03—0382

Opinion filed April 23, 2004.

Dale M. Funk, of Apoian, Ross & Funk, P.C., of O'Fallon, for appellant.

Stephen R. Clark and Jennifer L. Barbieri, both of Courtney, Clark & Associates, P.C., of Belleville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Three weeks after a joint-parenting-agreement order was entered, the petitioner and custodial parent, Mary Sale, now known as Mary Newton, petitioned the trial court for leave to remove the parties' son, D.S., from the State of Illinois to Vader, Washington. The trial court denied the petition for removal. We affirm.

## BACKGROUND

The parties were married on June 4, 1988. D.S., the parties' only child, was born on January 1, 1997. The parties separated in October 2001. The petitioner filed a petition for the dissolution of the marriage on February 13, 2002, and she sought the custody of D.S. On June 3, 2002, the respondent, Scott Sale, filed his answer and a counterpetition for dissolution, and he also sought the custody of D.S. A marital settlement agreement was entered on September 19, 2002. An order of dissolution and a joint-parenting-agreement order were entered on October 8, 2002. The parties agreed, *inter alia*, that the petitioner would be the custodial parent, with the respondent having custody on Tuesdays and Thursdays from 5:30 p.m. to 8 p.m. (except in the summer when the respondent would have custody from 6 p.m. to 9 p.m.

every Tuesday and Thursday), every other weekend, and every federally recognized holiday from 3 p.m. until 9 p.m.

On October 9, 2002, the petitioner married Edgar Newton, who resides in Vader, Washington. The petitioner met Mr. Newton through the Internet in January 2001. They first met face-to-face in April 2002. On October 29, 2002, the petitioner filed a motion for leave to remove D.S. from Illinois. A hearing was conducted on the motion to remove, at which time the following evidence was adduced.

The petitioner testified that the respondent initiated the parties' separation and advised her to get a job. The petitioner found a job as a part-time hair stylist at J.C. Penney. The petitioner currently earns approximately $8,000 per year. She testified that she will be able to work at a J.C. Penney Salon in Kelso, Washington, and that her income will increase to approximately $10,000 per year. The petitioner currently resides with her parents and D.S., because she is unable to afford her own home. If she moves to Washington, she will reside with her new husband, who owns a three-bedroom home located on 25 acres.

The petitioner's new husband testified that he earns $62,000 per year as one of four partners in a steel fabrication business. His recently refurbished home is only a few blocks from Vader Elementary School, which D.S. would attend. Both the petitioner and Mr. Newton said that their schedules would allow them to care for D.S. after school, thereby eliminating the need for day care. Mr. Newton has two children, ages 17 and 21, from a previous marriage, and they live nearby. He also has a number of relatives who live in the area. Mr. Newton testified that he looks forward to helping to care for D.S. and would like to help coach his little league teams.

The petitioner testified that Vader Elementary School offers smaller classes than D.S.'s present school in O'Fallon; however, she did not offer any test scores or testimony from educators about the benefits or drawbacks of either school. The petitioner testified that if she is allowed to move D.S. to Washington, the respondent can have visitation during Christmas, Easter, and most of the summer. The petitioner offered to travel with D.S. during such visitation.

The respondent has exercised all his visitation with D.S. He testified that he even attempted additional visits with D.S., but the petitioner would not allow it. On the other hand, the petitioner and her mother testified that while the respondent exercised all his visitation, he had not made any attempt to visit with D.S. outside the scheduled visitation.

The respondent and the respondent's mother testified that D.S. has several relatives in Illinois with whom he has regular contact,

including cousins who are around his age. One cousin is just a few months older than D.S.; they often spend the night together and are particularly close. The respondent testified that neither he nor his family has the means to travel to Washington should the petitioner be granted leave to remove. The respondent is concerned that if D.S. goes to Washington, he will be forced out of D.S.'s life and might even become an inconvenience to D.S.

After hearing all the evidence, the trial court denied the petition for removal, stating in pertinent part as follows:

> "Number one, it's hard for me. If you—if you crossed Mr. Newton out of this equation, it would be hard for me to accept that someone had to move as far away and still be in the continental United States[,] but move as far away from Belleville as you could get[,] to find a job in a J C Penneys [sic]. That's a tough proposition to accept.
>
> I found the testimony concerning the improvement in her lot on that point to be rather speculative. Quite frankly, it's obvious to this [c]ourt that the—that this move would not be taking place but for the relationship with Mr. Newton, and it doesn't matter whether it started on the Internet or not. That—it seems to be a thing of today.
>
> But the point is that is a relationship taken up that results in a change almost immediately—actually it was in anticipation of the impending dissolution.
>
> Under these circumstances, I do not believe the case law permits me—that would permit me to allow removal. I know this is a harsh result, but it's a harsh result either way I cut this. There is no easy answer. I have to make the call. To me, it's an easy call on the facts. It's just a tough call because I know it has great affect [sic] on the people involved.
>
> I certainly—I was impressed by Mr. Newton. It has absolutely nothing to do with him. I'm quite willing to believe that—that this is an improvement in [the petitioner's] lot in life. If the relationship with Mr. Newton appears to be a loving relationship, and I'm sure that's quite the case, but the problem is that coming right on the heels of the Joint Parenting Agreement, I don't believe it's justified to the extent of removing a child and taking him as far away as you can in these United States[—]away from the other parent, and for those reasons, I'm denying the application for removal."

The petitioner filed a motion for reconsideration, which was denied. The petitioner now appeals.

## ANALYSIS

The petitioner contends that allowing her to remove D.S. from Il-

linois to Washington is in the best interests of both her and D.S. The petitioner asserts that the trial court's decision denying the removal is against the manifest weight of the evidence and that the trial court incorrectly based its decision on the belief that marriage was an improper motive for removal and she could not petition for leave to remove directly after entering into the joint-parenting agreement. We disagree.

■ Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609(a) (West 2002)) provides that a removal may be granted by the trial court if it is in the child's best interests. Accordingly, in removal cases the paramount question is whether the move is in the child's best interests. While removal cases must be judged on their own unique set of facts (*In re Marriage of Berk*, 215 Ill. App. 3d 459, 463, 574 N.E.2d 1364, 1367 (1991)), the Illinois Supreme Court has provided guidance for determining whether a removal would be in the child's best interests. The following five factors should be considered in determining whether a removal is in the child's best interests: (1) whether the proposed move will enhance the quality of life for both the custodial parent and the child, (2) whether the proposed move is a ruse designed to frustrate or defeat the noncustodial parent's visitation, (3) the motives of the noncustodial parent in resisting removal, (4) the visitation rights of the noncustodial parent, and (5) whether a reasonable visitation schedule can be achieved if the move is allowed. *In re Marriage of Eckert*, 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045-46 (1988). A reasonable visitation schedule is one that would preserve and foster the child's relationship with the noncustodial parent. *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046. In applying these factors, we are mindful that the trial court's determination is not to be disturbed unless it is clear that its decision was against the manifest weight of the evidence. *In re Marriage of Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046. Moreover, the *Eckert* factors are by no means exclusive. "[A] circuit court may validly consider other relevant factors, as dictated by the specific circumstances of each case, in arriving at a best interests determination." *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 523, 791 N.E.2d 532, 546 (2003).

■ The first *Eckert* factor to be considered is the likelihood of enhancing the general quality of life for the petitioner and D.S. It is clear from the trial judge's comments that he did not believe that D.S.'s life would be enhanced by the move. The most that can be said in favor of this move regarding this factor is that the petitioner would be living with the man she apparently loves enough to marry the day after her divorce became final; however, simply because a party will be

happier living out of state with a new spouse than living without the spouse in Illinois is not enough to establish that a child's quality of life would be enhanced by the removal. Because a child has an important interest in maintaining significant contact with both parents following a divorce, a custodial parent must prove more than his or her own desire to live with a new spouse to show that a child's best interests will be served by a removal. *In re Marriage of Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044.

The petitioner attempted to put a positive spin on the situation by claiming that she would earn 30% more as a hairstylist in Washington than she did in Illinois; however, 30% of $8,000 is certainly not enough for a major improvement under these circumstances. We agree that the petitioner's life stands to be enhanced by the economic security her new husband can provide by virtue of his job and home, but we must look to more than economic factors. However, we also find noneconomic factors that do not weigh in favor of a removal.

For example, the petitioner presented no evidence that the school in Vader, Washington, that D.S. would attend is any better than the school in O'Fallon, Illinois, that D.S. now attends. There was no evidence concerning higher test scores, better curriculum, or better facilities. The petitioner offered her testimony that the class size would be reduced and that an aide would be present. She did not offer any evidence from teachers or administrators to corroborate her claim. Likewise, there is no evidence that cultural or recreational activities are better or more plentiful in Washington than in Illinois.

The petitioner and her new husband both testified that they could work out schedules whereby there would be no need for D.S. to have after-school day care; however, because the petitioner only works part-time in Illinois and clearly prefers to spend time with D.S. now, this does not tilt the scales in favor of a removal. Nor is it enough that the petitioner's new husband appears to be sincere in his desire to be a good stepparent, because the facts also indicate that the biological father is more than willing to be involved in D.S.'s life and assist him in extracurricular activities as he matures.

There was testimony that D.S. now enjoys a close relationship with his extended family, including grandparents, cousins, aunts, and uncles. D.S. is particularly close to a cousin who is the same age, and the two frequently visit and spend the night together. Relationships with his extended family would certainly suffer by D.S.'s removal to Washington. Overall, the testimony did not indicate that D.S.'s quality of life would improve by removing him from Illinois.

Regarding the second and third *Eckert* factors, we note that there was no evidence to suggest that the proposed move is a ruse designed

to frustrate or defeat the respondent's visitation or that the respondent's motives in resisting the removal are dishonorable. Therefore, these two factors do not weigh for or against either party. However, it is clear that a removal will affect the remaining *Eckert* factors, which concern visitation.

A removal of D.S. to Washington would severely undermine the respondent's exercise of his visitation rights and would do little to foster a relationship between father and son. Nevertheless, because in all instances a removal will have some adverse effect on visitation, the question becomes whether or not a reasonable and realistic visitation schedule can be developed. *In re Marriage of Collingbourne*, 204 Ill. 2d at 532, 791 N.E.2d at 550. As it stands, the respondent has weekly visitation with D.S. every Tuesday and Thursday evening. He also has visitation every other weekend and every federally recognized holiday from 3 p.m. until 9 p.m. By all accounts, the respondent has been diligent in exercising his visitation rights.

The petitioner proposed that if she is allowed to remove D.S., the respondent can have visitation at Christmas, Easter, and most of the summer, but not the two weeks after school is dismissed or the two weeks prior to school resuming. This schedule would not only reduce the number of actual days the respondent sees his son but also leave large gaps in time between visits. We agree with the respondent that this would not assist him in maintaining a close relationship with his son, especially as D.S. matures and develops his own friendships. It will become increasingly difficult for D.S. to leave his friends for the extended periods of visitation proposed by the petitioner.

As previously set forth, the *Eckert* factors are not exclusive and other relevant factors may be considered. The petitioner is correct that there is nothing to prohibit her from petitioning for a removal anytime she desires; however, we believe that the fact that she did so three weeks after signing a joint-parenting agreement was a relevant factor for the trial court to consider. It is also relevant that the petitioner married as quickly as she did after her divorce and that she married a man she had not spent much time with prior to the marriage, due to the distance between them.

After conducting a thorough hearing and weighing the evidence, the trial court concluded that a removal was not in D.S.'s best interests. As previously stated, a trial court's determination on a removal petition should not be reversed unless it is clearly against the manifest weight of the evidence. Under the facts presented, we cannot say that the trial court's determination that a removal was not in the best interests of D.S. is against the manifest weight of the evidence.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

HOPKINS, J., concurs.

JUSTICE WELCH, dissenting:

I believe that the circuit court's decision is against the manifest weight of the evidence and that it has stretched the *Eckert* factors too far. Therefore, I respectfully dissent from the majority's decision.

Unlike *In re Marriage of Eckert*, where the reasons given by the custodial parent were called "questionable" by the Illinois Supreme Court (*In re Marriage of Eckert*, 119 Ill. 2d at 328-29), the motives for the petitioner's move are sincere and the evidence in this case demonstrates that the proposed move would enhance the general quality of life for both the custodial parent and the child. The petitioner would be moving to her husband's home, located on 25 acres. The child will be able to attend a school with a smaller teacher-to-student ratio. Furthermore, the need for day care would be alleviated, because the petitioner or her husband would be able to care for D.S. after school. I believe that these direct and indirect benefits received by D.S. were not properly considered by the circuit court. See *In re Marriage of Zamarripa-Gesundheit*, 175 Ill. App. 3d 184, 189 (1988) (holding that while the move may not directly enhance the general quality of life for the child, it will significantly affect the general quality of life for the custodial parent and, therefore, indirectly beneficially affect the child's quality of life).

Furthermore, in *In re Marriage of Eckert*, the noncustodial parent was an "exemplary parent" with an exceptionally good relationship with his son, such that a removal would frustrate that relationship. In the instant case, although the respondent exercised his visitation rights diligently, the evidence does not bear out that he was an exemplary parent, as was the father in *In re Marriage of Eckert*. I believe that a reasonable visitation schedule could be crafted whereby D.S.'s relationship with his father could be preserved and fostered. The evidence reveals that the petitioner was willing to accommodate visitation by paying for travel expenses. That visitation would include extended weekend visitations around school holidays and extended summer visitation.

Accordingly, because I believe that the record demonstrates that a removal is in the best interests of D.S., I believe that the decision of

the circuit court is against the manifest weight of the evidence and should be reversed.